Samuel H. Hofstadter, J.
Under the decision of the United States Supreme Court in United States v. Benanti (355 U. S. 96), decided December 9, 1957, no wiretap order pursuant to *122 section 813-a of the Code of Criminal Procedure[1] may lawfully be issued.
As we have no system of advisory opinions in this State and, according to our practice, applications for wiretaps are made at Special Term, Part II, this memorandum will apprise enforcement and prosecuting officers that while I preside at Special Term, Part II during this month, no application for a wiretap order mil be honored.
Under the decision in Benanti, orders authorizing interceptions are contrary to controlling Federal law. Its authority requires me, therefore, to deny any application for such an order. For all wiretaps, whether ‘ ‘ authorized ’ ’ or not, in this State are now illegal. In Matter of Interception of Tel. Communications (207 Misc. 69), I denied an application in the exercise of discretion; any further application would have to be denied because of lack of lawful competence.
There may be those who differ from this interpretation of the Supreme Court decision. In that event, the result of these proceedings may be the salutary one that the view expressed here can be challenged and become the subject of authoritative determination by our State appellate courts; subject, of course, to any ultimate review in the United States Supreme Court.
Eecent decisions of the Supreme Court of the United States have adumbrated the expectancy that legal safeguards will provide the needed bridge between the moral and legal law. Time and again, the gap between moral and legal law has been spanned — sometimes by the slow and painful process of the innovation of time, and sometimes by a courageous leap into the future. Such an advance has been effected by the Benanti case. In clear accents, it tolls the knell of all wiretapping, including so-called “ legal ” wiretapping, in our State. Following the holding in Weiss v. United States (308 U. S. 321), it flatly proclaims, in language which no one can mistake, that an interception of a telephone communication, even by a State law enforcement officer acting under an order issued pursuant to section 813-a, constitutes a violation of section 605 of the Federal Communications Act (U. S. Code, tit. 47). Its expressions are compelling — it is explicit that the warrant of *123 the order does not make the wiretap legal; it is implicit that the order itself is unlawful!
New York police officers, suspecting one Benanti of dealing in narcotics, obtained a wiretap order from the court. As a result of the wiretap he was arrested. It was found that he was not a dealer in narcotics but a bootlegger of whiskey. He was turned over to Federal agents for prosecution. On his trial the State officers were permitted to testify to the wiretapped conversations. On appeal from his conviction the United States Court of Appeals decided, as a matter of first impression, that where there is no participation by a Federal officer the Communications Act does not bar, in a Federal court, the admissibility of evidence obtained by State officers by wiretaps in violation of the act.
The Supreme Court disagreed with this conclusion. It held unanimously that wiretapping by New York State law enforcement officers, although authorized by the State Constitution and statutes, violated Federal law and the evidence was inadmissible. The court found no exemption for State officials in section 605 of the Federal Communications Act of 1934, which reads: “ no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication ”.
Chief Justice Waerek said: “ The Constitution and statutes of the State of New York provide that an ex parte order authorizing a wiretap may be issued by judges of a certain rank * * * Respondent does not urge that, constitutionally speaking, Congress is without power to forbid such wiretapping even in the face of a conflicting state law * * * Rather the argument is that Congress has not exercised this power and that Section 605, being general in its terms, should not be deemed to operate to prevent a State from authorizing wiretapping in the exercise of its legitimate police functions. However, we read the Federal Communications Act, and Section 605 in particular, to the contrary.
11 The Federal Communications Act is a comprehensive scheme for the regulation of interstate communication. In order to safeguard those interests protected under Section 605, that portion of the statute pertinent to this case applies both to intrastate and to interstate communications. * * * In light of the above considerations, and keeping in mind this comprehensive scheme of interstate regulation and the public policy underlying Section 605 as part of that scheme, we find that Congress, setting out a prohibition in plain terms, did not *124 mean to allow state legislation which would contradict that •section and that policy. Cf. Pennsylvania v. Nelson, 350 U. S. 497; Hill v. Florida, 325 U. S. 538; Hines v. Davidowitz, 312 U. S. 52.” (United States v. Benanti, 355 U. S. 96, 103-106.)
In the Benanti case, the United States Court of Appeals for this circuit had said: “ Despite the warrant issued by the New York State court pursuant to New York law, we have no alternative other than to hold that by tapping the wires, intercepting the communication made by appellant and divulging at the trial what they had overheard, the New York police officers violated the federal statute. Nardone v. United States, 302 U. S. 379; * * * 308 U. S. 338; * * * Weiss v. United States, 308 U. S. 321. * * * Section 605 of 47 U. S. C. A. is too explicit to warrant any other inference — and the Weiss case made its terms applicable to intrastate communications.” (244 F. 2d 389, 391.)
These views of the Court of Appeals regarding the illegality of the “ authorized ” wiretap were confirmed by the Supreme Court, but its ruling of the admissibility of the fruits of the tap was overruled, the Supreme Court basing its decision on the intent of the Federal Communications Act.
After its first pronouncement, the United States Court of Appeals, several months later, reiterated its views on the illegality of intrastate interceptions, saying: ‘ ‘ Appellant next contends that the act does not apply to the calls he intercepted, because they were intrastate in character rather than interstate or foreign. This contention is completely refuted by Weiss v. United States, 308 U. S. 321, * * * [wherein the court said] at page 327: ‘ Plainly the interdiction thus pronounced is not limited to interstate and foreign communications. And, as Congress has power, when necessary for the protection of interstate commerce, to regulate intrastate transactions, there is no constitutional requirement that the scope of the statute be limited so as to exclude intrastate communications.’ And at page 329: ‘We hold that the broad and inclusive language of the second clause of the section is not to be limited by construction so as to exclude intrastate communications ’ (United States v. Gris, 247 F. 2d 860, 863.)
Thus, section 605, as interpreted by controlling Federal judicial authority renders unlawful the interception of all telephone messages within our State, even by an officer acting under an order of this court; it cannot be within the competence of this court, properly exercised, to “ authorize ” such an unlawful act — section 813-a of the Code of Criminal Procedure to the contrary notwithstanding. For “ In case of conflict, the state *125 law, not an otherwise unobjectionable federal statute, must give way ” under the Constitution. (United States v. Gris, supra, p. 863.)
The supremacy clause of the United States Constitution, clause 2 of article VI, provides: ‘ ‘ This Constitution, and the Laws of the United States, which shall be made in Pursuance thereof * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.” And, since Gibbons v. Ogden (9 Wheat. [U. S.] 1), it has been firmly established that when Congress enacts legislation within its competence, and it becomes the ‘ ‘ supreme Law of the Land ” under the Constitution, State interests must yield to the paramount national concern. The law of the general government governs. The exercise by Congress of its power is absolute — it precludes, modifies, or suspends — as the case may be — local legislation in conflict or inconsistent with Federal enactments.[2]
In the interpretation and construction of Federal statutes, Federal judicial rulings are controlling.[3] The Supreme Court has held that the Communications Act is an “ express, absolute prohibition ” against interception or divulgence of wiretapping with no qualifications — that when State officers indulge in wiretapping they are violating Federal law and subject themselves to Federal prosecution. So long, therefore, as section 605 of the Federal Communications Act remains the law, so much of *126 section 813-a of our Code of Criminal Procedure which permits interceptions, is inoperative.
Hence, even when authorized, interceptions of telephone messages within this State are illegal. Yet, orders have been issuing and interceptions have been made. As Benanti and Gris now make it painfully clear, the orders so issuing out of the courts to ‘ ‘ authorize ’ ’ interceptions, have been void because contrary to law.
These decisions require that we now cease and desist, for it cannot be lawful to authorize what is an illegal act. It is more and worse than a mere futility — for if the police officer violates the Federal statute by tapping wires notwithstanding a warrant issued out of this court pursuant to New York law — if that act be illegal — those who set the act in motion have condoned if not instigated illegality. Clearly a judge may not lawfully set the wheels in motion toward the illegality by signing an order — the warrant itself partakes of the breach, willful or inadvertent, of the Federal law. Such breach may not find sanction in the orders of courts charged with the support of the law of the land and with enforcing that law!

. So far as here material, section 813-a of the Code of Criminal Procedure (enacted under art. I, § 12 of the State Constitution) reads: “An ex parte order for the interception * * * of * * * telephonic communications may be issued by any justice of the supreme court * * * [when] there is reasonable ground to believe that evidence of crime may be thus obtained ”. Any reference in this memorandum to this section applies only to telephone interceptions.

. Pennsylvania v. Nelson (350 U. S. 497, supra) restated the rules for determining whether a Federal statute may be supplemented by a State enactment, where, as here, Congress has not stated specifically that its legislation fully occupied a field in which the States would otherwise be free to legislate. The touchstones for decision, said the Supreme Court, were: First, that the scheme of Federal regulation was so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. Second, that the Federal statute touched a field in which the Federal interest was so dominant that the Federal system must he assumed to preclude enforcement of State laws on the same subject. Third, that enforcement of the State statute would present a serious danger of conflict with the Federal program.

. (Sadowski v. Long Island R. R. Co., 292 N. Y. 448, 453; Brown & Bigelow Remembrance Adv. Prods., 279 App. Div. 410, 412, affd. 304 N. Y. 909; Ruggiero v. Liberty Mut. Ins. Co., 272 App. Div. 1027, affd. 298 N. Y. 775; see, also, Bailey v. Central Vermont Ry., 319 U. S. 350, 352; Chicago, Milwaukee & St. Paul Ry. Co. v. Coogan, 271 U. S. 472, 474; Jacobs v. Reading Co., 130 F. 2d 612, 614; Albert Pick & Co. v. Wilson, 19 F. 2d 18, 19.) It is implicit in the cases constituting prevailing authority that authoritative Federal decisions even when not those of the Supreme Court, govern; it has been rendered explicit, too. (See, especially, Ruggiero v. Liberty Mut. Ins. Co., supra.)