275 F.2d 503
 Burton N. PUGACH, Petitioner-Appellant,
v.
Honorable Isidore DOLLINGER, District Attorney of Bronx County and Honorable Stephen P. Kennedy, Police Commissioner of the City of New York, Respondent-Appellees.
 No. 26116.
 United States Court of Appeals Second Circuit.
 Argued February 1, 1960.
 Decided February 11, 1960.
 
 Herbert S. Siegel and Louis Fusco, Jr., Bronx, New York City, for petitioner-appellant.
 Irving Anolik, Asst. Dist. Atty., Bronx County, New York City (Isidore Dollinger, Dist. Atty., Bronx County, and Alexander E. Scheer, Asst. Dist. Atty., Bronx, New York City, on the brief), for respondent-appellees.
 Before MEDINA and WATERMAN, Circuit Judges, and MADDEN, Judge, United States Court of Claims.*
 MEDINA, Circuit Judge.
 
 
 1
 Burton N. Pugach and others were indicted by the Grand Jury of Bronx County, New York, charged with the crimes of burglary in the second degree, maiming, assault in the second degree and conspiracy. Another indictment charges Pugach with felonious possession of fire-arms. Proceedings are pending in the County Court of Bronx County and we are informed by the Assistant District Attorney in charge that "it will not be possible to delay this case beyond February 15."
 
 
 2
 The present action was brought in the United States District Court for the Southern District of New York against the District Attorney of Bronx County and the Police Commissioner of New York City for a permanent injunction restraining the use by them and their agents and employees on the forthcoming trial of certain wiretap evidence. A motion for a preliminary injunction was denied and the complaint was dismissed. Pugach appealed to this Court from the order denying the preliminary injunction and dismissing his complaint. The matter comes before us on a motion for a stay pending the hearing of the appeal.
 
 
 3
 It is not disputed that defendants or their agents on June 15, 1959 procured an order of the Supreme Court of the State of New York permitting Pugach's telephone wires to be tapped, that they were tapped and that the contents of the wiretaps were divulged to the Grand Jury. It is also asserted and not denied that the wiretaps were divulged "to the press and to other persons." We agree with the statement by the District Judge: "It appears highly likely that the prosecution will use such evidence against plaintiff on the trial of the indictments." Indeed, the position of the District Attorney on this motion is not that no wiretap evidence will be used on the trial but rather that the order permitting the wiretap was authorized by Article I, Section 12 of the New York Constitution, by Section 813-a of the New York Code of Criminal Procedure, and the evidence thereof held to be admissible in criminal prosecutions by the recent decisions of the New York Court of Appeals in People v. Variano, 1959, 5 N.Y.2d 391, 185 N.Y.S.2d 1, and People v. Broady, 1959, 5 N.Y.2d 500, 186 N.Y.S. 2d 230; and he further contends that a federal court not only should not interfere with the use of such wiretap evidence but is without power or jurisdiction to do so. Under these circumstances we see no reason to doubt that the wiretap evidence will be used at the trial unless we take action to prevent such use.
 
 
 4
 Pugach's argument is: that Section 605 of the Federal Communications Act, 47 U.S.C.A. § 605, makes it a federal crime to tap a telephone and "divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication"; that defendants or their agents are about to commit this federal crime by further divulging and offering the wiretaps in evidence at the trial; that the Supreme Court has in effect held in United States v. Benanti, 1957, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126, that the constitutional and legislative authorization of wiretaps by the State of New York is illegal and void; that if the evidence is received at the trial and Pugach is convicted he will be wholly without remedy, since under Schwartz v. State of Texas, 1952, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231, which is still in effect, the evidence will be admissible under the New York rules of evidence, even though illegally obtained, and his conviction will not be reversed. He also claims that the result of such violations of federal law will deprive him of his liquor license and his license to practice law. Pugach argues that, unless we grant the injunctive relief he prays, defendants and their agents will go ahead and violate the federal statute with impunity, shielding themselves behind a constitutional and legislative scheme of the State of New York that has been held by the Supreme Court to be invalid. This is a powerful argument and we have been unable to find any satisfactory answer to it.
 
 
 5
 It is interesting to note that on the same day the motion now under consideration was argued we also heard argument in United States ex rel. Graziano v. McMann, another wiretapping case. The regular New York procedure had been followed, the wiretap evidence was received at the trial and Graziano was convicted. The judgment of conviction was affirmed by the Appellate Division, 1957, 3 A.D.2d 1010, 165 N.Y.S.2d 445, and by the Court of Appeals, 1958, 4 N.Y.2d 881, 174 N.Y.S.2d 465, 150 N.E. 2d 768. A motion to amend the remittitur to note that a question arising under the federal Constitution had been argued and decided was denied, 1958, 4 N.Y.2d 1046, although Graziano had objected to the wiretap evidence and claimed it should not have been received as it violated the federal statute against intercepting and divulging telephone messages, and the Supreme Court denied certiorari, 1958, 358 U.S. 851, 79 S.Ct. 79, 3 L.Ed.2d 85. Thereafter Graziano applied for habeas corpus in the United States District Court for the Northern District of New York on the ground that his conviction violated his right to due process of law under the Fourteenth Amendment and the writ was dismissed. It was the appeal from the order dismissing the writ in Graziano that was argued before us on the same day Pugach's motion was argued. This Court has affirmed the order dismissing the writ in Graziano in an opinion filed herewith. This gives point to what may happen to Pugach if this motion is denied. In other words, once the federal law against wiretapping has been violated by state enforcement officers testifying at the trial to the contents of the wiretap, and a conviction has been obtained by use of such proof, the only remedy may well be a criminal prosecution against the enforcement officers who have violated the law or perhaps a civil suit by the convicted defendant for damages. That such remedies are hopelessly inadequate and that the convicted man will have suffered irreparable injury would seem to be self-evident. But here we can act in time to prevent the additional violation of Section 605 that will occur when the wiretap evidence is divulged and used at the trial.
 
 
 6
 In United States v. Benanti, 2 Cir., 1957, 244 F.2d 389, 391, we held:
 
 
 7
 "Despite the warrant issued by the New York State court pursuant to New York law, we have no alternative other than to hold that by tapping the wires, intercepting the communication made by appellant and divulging at the trial what they had overheard, the New York police officers violated the federal statute. Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314; Id., 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298. Section 605 of 47 U.S.C.A. is too explicit to warrant any other inference, and the Weiss case made its terms applicable to intrastate communications. The section provides:
 
 
 8
 `* * * no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person * * *.'"
 
 
 9
 We also held, following as we thought the earlier cases, especially Wolf v. People of State of Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 that the fact that the federal officers had not participated in the wiretap and had no knowledge of it until the fact was brought out at the trial on cross-examination required us to affirm the conviction. In this we were mistaken, as the Supreme Court held the evidence was not admissible. United States v. Benanti, 1957, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126. But our ruling[1] that the New York police officers had violated the federal law against divulging the contents of a wiretap, even though authorized by New York state law, was not disturbed. Instead, the Court held at pages 105-106 of 355 U.S., at page 160 of 78 S.Ct.:
 
 
 10
 "In light of the above considerations, and keeping in mind this comprehensive scheme of interstate regulation and the public policy underlying Section 605 as part of that scheme, we find that Congress, setting out a prohibition in plain terms, did not mean to allow state legislation which would contradict that section and that policy.[18]"
 
 Footnote 18 reads:
 
 11
 "In passing, it should be pointed out that several Attorneys General of the United States have urged Congress to grant exceptions to § 605 to federal agents under limited circumstances. See, e. g., Hearings before Subcommittee No. 5 of the House Committee on the Judiciary on H.R. 762, 867, 4513, 4728, 5096, 84th Cong., 1st Sess., 28; Rogers, The Case for Wire Tapping, 63 Yale L.J. 792 (1954). But Congress has declined to do so. In view of this, it would seem unreasonable to believe that Congress is willing to allow this same sort of exception to state agents with no further legislation on its part."
 
 
 12
 We find nothing to the contrary in Schwartz v. State of Texas, 1952, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231, which merely construed Section 605 as precluding "the conclusion that Congress intended to thwart a state rule of evidence in the absence of a clear indication to that effect." See Benanti, 355 U.S. at page 101, 78 S.Ct. at page 158. In other words, the rule of evidence that permits proof illegally obtained to be received in evidence is a rule of state law and, in the absence of valid federal legislation to the contrary, the application of such a rule in and of itself does not constitute a violation of the constitutional requirement of due process.
 
 
 13
 In denying relief the District Judge relied upon Stefanelli v. Minard, 1951, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138, where it was held that an injunction would not issue to prevent the New Jersey State Police from using in a state criminal prosecution the fruits of an unlawful search and seizure. But there the violation of the constitutional prohibition had already taken place. Under such circumstances it might well be thought that there was no more involved than a state rule to the effect that evidence illegally obtained was nonetheless admissible. Naturally there was a reluctance to interfere and disturb the delicate balance between federal and state functions, especially in the administration of the criminal laws. Here the very act of the police officers in testifying and divulging the contents of the wiretap will constitute the commission of a separate federal crime in futuro.[2] We do not think we lack power to prevent this. Unless we act now it may well be too late. Surely the delicate balance between federal and state functions does not require the federal courts to sit idly by and countenance or acquiesce in persistent and repeated violations of federal law. Moreover, the fact that the wiretapping is authorized pursuant to the Constitution and legislation of the State of New York, pursuant to which New York judges continue to order wiretapping and police officers do the wiretapping and divulge the contents of the wiretaps in their testimony, even after the Supreme Court has held these constitutional and legislative provisions to be an invasion of a field preempted by the Congress, makes the position of defendants even more untenable.
 
 
 14
 Accordingly, until the hearing and determination of the appeal from the order denying plaintiff's application for a temporary injunction and dismissing plaintiff's complaint, defendants and their agents and employees are hereby enjoined and restrained from using and disclosing wiretap evidence at the trial of Pugach in the County Court of Bronx County, New York, on the two indictments there pending against him.
 
 
 
 Notes:
 
 
 *
 Sitting by designation pursuant to the provisions of 28 U.S.C. § 291(a)
 
 
 [1]
 See also United States v. Gris, 2 Cir., 1957, 247 F.2d 860, 863
 
 
 [2]
 See Refoule v. Ellis, D.C.N.D.Ga.1947, 74 F.Supp. 336, cited in footnote in Stefanelli, 342 U.S. at page 124, 72 S.Ct. at page 122
 
 
 
 15
 WATERMAN, Circuit Judge (concurring).
 
 
 16
 I concur but solely on a very limited ground. If we deny the stay and the wiretap evidence is introduced at the trial next Monday, February 15, 1960, the important question presented by this application will not have been timely ruled upon, and, as appears in our opinion in United States ex rel. Graziano v. McMann, filed herewith, it is probable that nothing can be done thereafter to revive it. As soon as the wiretap evidence is offered and received at the trial and the contents of the wiretaps are thus divulged, the question now before us will have become moot. On the other hand, the granting of the stay will maintain the status quo pending appeal to our Court from the decision below. If we err in so doing, the stay will be promptly vacated by the United States Supreme Court, or a Justice thereof, and defendants will then be free to tender the wiretaps in evidence at the trial in the County Court of Bronx County. Although it is intolerable that the federal courts should so presume to interfere with the orderly progress of the administration of justice in the State Courts by issuing stay orders, the present situation is intolerable, too. It goes against the grain to sit idly and await the violation of a federal statute one knows is to be violated, while also knowing that the only redress the United States may have after the violation is to proceed under § 501 against a conscientious police officer who is only obeying orders.
 
 
 17
 Moreover, there is uncertainty among the State officers themselves. At least one of the Justices of the New York Supreme Court refuses to sign orders authorizing wiretaps on the ground that they are now clearly illegal under the ruling of the Supreme Court in United States v. Benanti, 1957, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126. Matter of Interception of Telephone Communications, 1958, 9 Misc.2d 121, 170 N.Y.S.2d 84 (per Hofstadter, J.). But, as disclosed by the affidavits now before us, other Justices of the New York Supreme Court pursue a contrary course and numerous orders authorizing wiretaps are issued. This leaves in the middle conscientious New York State and municipal police officers who have tapped wires pursuant to court order. It could well be that some of them, as the occasion presented itself, might be prosecuted for violating Section 605 when they divulge or publish what they have thus obtained. Such a divulgence would be in violation of the plain prohibition of the Section. Therefore, if at all possible to do so, it is in the public interest to have the present anomalous state of affairs clarified. For this reason, and this reason alone — and with many misgivings — I concur in the granting of the stay. I would point out that we are not enjoining the prosecution itself, but only the introduction at the trial of wiretap evidence.
 
 
 18
 MADDEN, Judge (dissenting).
 
 
 19
 The petitioner-appellant's motion for stay of the criminal proceeding in the state court of New York assumes, correctly, that the New York Court will follow the New York rules of evidence, and will admit evidence obtained by tapping the petitioner's telephone.
 
 
 20
 The New York rule of evidence is, that the court, when engaged in trying a criminal case, will not take notice of the manner in which witnesses have possessed themselves of papers and other articles of personal property which are material and properly offered in evidence.
 
 
 21
 The foregoing quotation is from the opinion in People v. Adams, 176 N.Y. 351, 358, 68 N.E. 636, 638, 63 L.R.A. 406. It was quoted with approval in People v. Richter's Jewelers, 291 N.Y. 161, 51 N.E. 2d 690, 150 A.L.R. 560.
 
 
 22
 This rule of evidence is said by the petitioner to have been derived from the common law; to have been introduced into American jurisprudence toward the middle of the nineteenth century; and to have been adopted by a majority of American state jurisdictions.
 
 
 23
 The petitioner's estimate of the precedents is verified by Wigmore on Evidence (3rd Ed.), vol. 8, §§ 2183-2184b and McCormick on Evidence, §§ 137-142.
 
 
 24
 That the rule that wiretap evidence is admissible is only a rule of evidence is confirmed by the highest authority, speaking in 1957, in Benanti v. United States, 355 U.S. 96, 101, 78 S.Ct. 155, 2 L.Ed.2d 126. There, Chief Justice Warren for a unanimous Court, distinguished Schwartz v. State of Texas, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231, by saying:
 
 
 25
 "The rationale of that case is that despite the plain prohibition of Section 605 (the Federal Wiretapping Statute), due regard to federal-state relations precluded the conclusion that Congress intended to thwart a state rule of evidence in the absence of a clear intention to that effect."
 
 
 26
 What this Court is asked to do in the instant case is to hold that it is a violation of due process of law for a State to apply a rule of evidence which is the rule in a majority of the States of the United States. Can it be that the essentials of "ordered liberty" of decent and rational process of law have been hidden from so many courts and judges and juristic authorities during so many years, and have now at last been revealed, and only to this Court?
 
 
 27
 The instant petition urges the Federal District Courts to go into the business of supervising the proceedings in State Courts in their day-to-day activities; to take a seat on the bench beside the State Court Judge and direct him how to rule on the admission of evidence offered at the trial. It would be hard to imagine a more intolerable practice, even if it were indulged in by judges of higher rank, but in the same judicial hierarchy. Here again we have recent admonition from the Supreme Court of the United States. In Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138, Mr. Justice Frankfurter wrote for the Court in a case practically on all fours with the instant one. There the petitioners sought, in a Federal Court, an injunction against the use, in a State criminal proceeding, of evidence obtained by State police by an illegal search. The Supreme Court said, 342 U.S. at page 120, 72 S.Ct. at page 120,
 
 
 28
 "Here the considerations governing that discretion [the discretion of a Court of Equity in determining whether to issue an injunction] touch perhaps the most sensitive source of friction between States and Nation, namely, the active intrusion of the federal courts in the administration of the criminal law for the prosecution of crimes solely within the power of the States."
 
 
 29
 At pages 123-124 of 342 U.S., at page 121 of 72 S.Ct. the Supreme Court said:
 
 
 30
 "The consequences of exercising the equitable power here invoked are not the concern of a merely doctrinaire alertness to protect the proper sphere of the States in enforcing their criminal law. If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law — with its far-flung and undefined range — would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. Asserted unconstitutionality in the impaneling and selection of the grand and petit juries, in the failure to appoint counsel, in the admission of a confession, in the creation of an unfair trial atmosphere, in the misconduct of the trial court — all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution."
 
 
 31
 I would deny the requested stay.