Irwin D. Davidson, J.
Application has been made for an order pursuant to section 813-a of the Code of Criminal Procedure to authorize the tap of a telephone wire. In the light of the decision of the United States Court of Appeals in the case of Pugach v. Dollinger, decided February 11, 1960, this court has re-examined the propriety of signing ex parte wiretap orders. It deems itself constrained to deny the application.
The United States Supreme Court in United States v. Benanti (355 U. S. 96 [Dec. 9, 1957]) held that the New York State constitutional and legislative authorization to tap wires pursuant to section 813-a of the Code of Criminal Procedure was without validity and suspended as long as section 605 of the Federal Communications Act (U. S. Code, tit. 47, § 605) remains in effect. The court stated (pp. 105-106): “In the light of the above considerations, and keeping in mind this comprehensive scheme of interstate regulation and the public policy underlying Section 605 as part of that scheme, we find that Congress, setting out a prohibition in plain terms, did not mean to allow state legislation which would contradict that section and that policy (Cf. Pennsylvania v. Nelson, 350 U. S. 497; Hill v. Florida, 325 U. S. 538; Hines v. Davidowitz, 312 U. S. 52.)
Immediately following that decision, Justice Hofstadter, of our State Supreme Court, in Matter of Interception of Tel. Communications (9 Misc 2d 121 [Jan. 2, 1958]) ruled that he would no longer sign wiretap orders. He held that to do so would set in train the commission of a violation of a Federal statute controlling in this jurisdiction under the Benanti case. He stated (pp. 124-125): “ Thus section 605, as interpreted by controlling Federal judicial authority, renders unlawful the interception of all telephone messages within our State, even by an officer acting under an order of this court; it cannot be within the competence of this court, properly exercised, to ‘ authorize5 such an unlawful act — section 813-a of the Code of Criminal Procedure to the contrary notwithstanding. For *544 ‘ In case of conflict, the state law, not an otherwise objectionable federal statute, must give way,’ under the Constitution. (United States v. Gris, supra, p. 863.) ” (Italics supplied.)
Notwithstanding the Benanti case (supra), however, the practice generally of authorizing wiretaps continued in New York in reliance on the earlier case of Schwartz v. Texas (344 17. 8. 199). Indictments based on such evidence were not dismissed and convictions so secured were upheld on appeal. But the Schwarts case had merely held that once there was a conviction in a State court — even though it had been based on evidence secured in violation of section 605 — the Federal court would not overturn it.
Now, however, the United States Court of Appeals in this circuit in Pugach v. Dollinger (275 F. 2d 503 [Feb. 11, 1960]) has held that because wiretaps are a violation of section 605 — notwithstanding purported authorization — the Federal jurisdiction would enjoin their use, if appeal in advance of trial. The practice, therefore, of signing ex parte wiretap orders is no longer tenable. Schwartz v. Texas (supra) is not pertinent on a present application for authorization under section 813-a of the Code of Criminal Procedure.
Not only is the illegality of wiretaps manifest under the Benanti decision, but their futility has been determined by the United States Court of Appeals.
The petitioner in the Pugach case urged (275 F. 2d 505) that unless an injunction be granted * ‘ defendants and their agents [police and District Attorney] would go ahead and violate the federal statute with impunity, shielding themselves behind a constitutional and legislative scheme of the State of New York that has been held by the Supreme Court to be invalid.” The court, in granting the preliminary injunction, stated (pp. 505-507): “ This is a powerful argument and we have been unable to find any satisfactory answer to it * * *. Here the very act of the police officers in testifying and divulging the contents of the wiretap will constitute the commission of a separate [italics supplied] federal crime in futuro. We do not think we lack power to prevent this. Unless we act now it may well be too late. Surely the delicate balance between federal and state functions does not require the federal courts to sit idly by and countenance of acquiesce in persistent and repeated violations of federal law. Moreover, the fact that the wiretapping is authorized pursuant to the Constitution and legislation of the State of New York, pursuant to which New York judges' continue to order wiretapping and police officers do the wiretapping and divulge the contents of the wiretaps in their testimony, *545 even after the Supreme Court has held these constitutional and legislative provisions to be an invasion of a field pre-empted by the Congress, makes the position of defendants even more untenable. ’ ’
While that ruling was made on a preliminary application for an injunction, the logic behind the decision is irresistible. The effect of that holding is that evidence obtained by means of an ex parte State court wiretap order, which is an illegal act under the Benanti case, will prompt the Federal court, on application, to enjoin the proposed divulgence of such evidence in a State court trial.
The rationale of the Pugach case was made clear by the court. After information obtained by means of an illegal State court wiretap order has been introduced in evidence in a State court, a defendant may obtain no redress in the State court on the ground that his constitutional rights were violated. (United States ex rel. Grazino v. McMann, 275 F. 2d 284 [Feb. 11, 1960].) Hence, a defendant so situated "would be left with the hopelessly inadequate remedy of seeking a criminal prosecution against the police officers who had violated the law by tapping a wire pursuant to State court order or a civil suit for damages. However, that the convicted man will have suffered irreparable injury is self evident.
Should the Judges of our State courts continue to sign ex parte wiretap orders knowing that they are illegal under the Benanti and Pugach cases, and place the burden on a defendant of seeking a Federal court injunction against the threatened disclosure in the State courts of the evidence thus illegally obtained f — I think not. Our courts are courts of justice and Judges should not be parties to authorizing an ostensibly futile as well as illegal act.
The Appellate Division in People v. Dinan (7 A D 2d 119, 121-122) stated: “However, it must not be forgotten that the Court of Appeals, in formulating and adhering to the New York rule, did so, as we have seen, with realization that the very introduction of evidence of this nature would itself constitute the commission of a crime, one with the ostensible sanction of the trial court.” (Italics supplied.)
In view of the illegal character of an ex parte wiretap order (United States v. Benanti, supra) and in the light of the Pugach decision (supra) the obligation of restraining the threatened divulgence of the contents of such illegal wiretap should not be shifted to a defendant. If lawlessness there be, the court should refrain from initiating it, rather than require a defendant to seek affirmatively an order restraining the use of the fruits *546 of such illegality. Lawlessness by the police and the District Attorney, who are sworn to uphold and enforce the law, will not aid in the enforcement of the criminal law, nor will it heighten the respect of our citizens for our law.
Should ex parte wiretap orders be signed in aid of purely investigative purposes where the District Attorney assures the court that any information so obtained will not be presented in court? The answer must be in the negative. The pertinent part of section 605 of the Federal Communications Act provides : “no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person ”. (Italics supplied.)
This section is all embracive in its prohibition. The interception of a telephone communication and its divulgence to any person are banned. A tap without divulgence is meaningless and would lack efficacy. To attempt to make a distinction between the interception and the divulgence would be, to quote Justice Frankfurter in another context, to indulge in “ a sterile juristic dialectic.”
The section does not limit the divulgence of the contents of an illegal wiretap solely to court proceedings. The police officer who listens to the illegal tap and divulges its contents to his superior officer or to the Assistant District Attorney violates section 605 in the same manner as though he testifies to it in court. It was the realization of this inevitable result that doubtless prompted our Police Commissioner recently to declare publicly in no uncertain terms that unless and until section 605 of the Federal Communications Act is amended to give explicit authorization to wiretaps by State officials, he would issue a directive that no police officer under his jurisdiction would apply for authorization to intercept a telephone communication.
In the light of the foregoing my present ruling conforms to the decisions which are to the effect that the New York courts may not authorize what is an illegal act. Above and beyond procedural questions as to the issuance of an injunction, preliminary or permanent, in these situations, the stark fact emerges that tapping wires to be followed by divulgence on a trial or otherwise is an illegal procedure. There can be no legal as there is no moral justification for authorizing it.
In his concurring opinion in the Pugach case (supra) Judge Waterman manifested grave reluctance to interfere with the processes of State courts, saying (p. 508): “Although it is intolerable that the federal courts should so presume to interfere with the orderly progress of the administration of justice in *547 the State Courts by issuing stay orders, the present situation is intolerable, too. It goes against the grain to set idly and await the violation of a federal statute one knows is to be violated ”.
The State’s judiciary should find it yet more intolerable for its officers to flout the law of the land. They should not countenance the practice. Certainly, they may not lend active encouragement by issuing invalid orders which suggest a color of right in a manifest violation of such law. In the language of Judge Hofstadter : “ These decisions require that we now cease and desist, for it cannot be lawful to authorize what is an illegal act. It is more and worse than a mere futility — for if the police officer violates the Federal statute by tapping wires notwithstanding a warrant issued out of this court pursuant to New York law — if that act be illegal — those who set the act in motion have condoned if not instigated illegality. Clearly, a judge may not lawfully set the wheels in motion toward the illegality by signing an order — the warrant itself partakes of the breach, willful or inadvertent, of the Federal law. Such breach may not find sanction in the orders of courts charged with the support of the law of the land and with enforcing that law! ” (Matter of Interception of Tel. Communications, supra, p. 126.)
The application of the District Attorney for the foregoing wiretap order is in all respects denied.