365 U.S. 458 (1961)
PUGACH
v.
DOLLINGER, DISTRICT ATTORNEY OF BRONX COUNTY, ET AL.
No. 111.
Supreme Court of United States.
Argued January 16, 1961.
Decided February 27, 1961.
CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT.
George J. Todaro argued the cause and filed a brief, and Frances Kahn filed an appearance, for petitioner.
Walter E. Dillon and Irving Anolik argued the cause for respondents. With them on the brief were Isidore Dollinger, respondent, pro se, and Alexander E. Soheer.
Briefs of amici curiae, urging affirmance, were filed by Louis J. Lefkowitz, Attorney General of New York, Paxton Blair, Solicitor General, and Jean M. Coon, Assistant Attorney General, for the Attorney General of New York, and by Edward S. Silver and Aaron Nussbaum for the District Attorneys' Association of New York.
Emanuel Redfield filed a brief for the New York Civil Liberties Union et al., as amici curiae, urging reversal.
PER CURIAM.
The judgment is affirmed on the authority of Schwartz v. Texas, 344 U. S. 199, and Stefanelli v. Minard, 342 U. S. 117.
MR. JUSTICE BRENNAN would also affirm but solely on the authority of Stefanelli v. Minard, 342 U. S. 117.
*459 MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE concurs, dissenting.
In Schwartz v. Texas, 344 U. S. 199, a pawnbroker was convicted as an accomplice in a robbery. Records of his telephone conversations, gotten by police eavesdropping, were admitted in evidence against him during his trial in the state court. He claimed that such evidence was inadmissible under 47 U. S. C. § 605.[1] This Court rejected that claim without even stopping to see if indeed there had been a violation of the federal statute. The rationale of that rejection was that, "Where a state has carefully legislated so as not to render inadmissible evidence obtained and sought to be divulged in violation of the laws of the United States, this Court will not extend by implication the statute of the United States so as to invalidate the specific language of the state statute." Id., 202.
The later decision of this Court in Benanti v. United States, 355 U. S. 96, swept away that rationale, and Schwartz v. Texas, supra, today stands alone as an aberration from the otherwise vigorous enforcement this Court has given to the congressional policy embodied in 47 U. S. C. § 605. For in Benanti, in setting aside a federal conviction, we held that the proscription of wiretapping contained in § 605 forbade wiretapping by an authorized executive officer of the State, acting under the explicit terms of a state statute and pursuant to a warrant issued *460 by the state judiciary. "[K]eeping in mind [the] comprehensive scheme of interstate regulation and the public policy underlying Section 605 as part of that scheme, we find that Congress, setting out a prohibition in plain terms, did not mean to allow state legislation which would contradict that section and that policy." Id., 105-106. It seems incongruous to me that this sweeping congressional purpose should now be held to make a detour around the precincts of a state court. This is especially true where, as here, officials have shown such an avid taste for violating the law. See Dash, Schwartz and Knowlton, The Eavesdroppers, pp. 68-69. In such circumstances, redress other than by an exclusionary ruleagainst the criminal acts of those who bear the badge of the law is neither easy nor generous. Cf. Wolf v. Colorado, 338 U. S. 25, 41, 42-44 (dissenting opinion).
Yet today a majority of this Court summarily holds that Schwartz v. Texas, supra, is still the law, and petitioner is left only with the consoling knowledge that Congress meant to protect the privacy of his telephone conversations,[2] while the benefits of the congressional intendment are denied him.
*461 Petitioner is charged, in a New York state court, with the commission of several serious crimes. His complaint in the instant proceeding alleged that "on or about June 15th, 1959, and thereafter" agents of the District Attorney and of the New York police force tapped his telephone wires pursuant to a state court warrant and "obtained certain information." That information, and other evidence to which it led, was divulged to the grand jury, which indicted petitioner, and to the press. But more importantly there was the allegation that the "defendants intend to use the evidence obtained by use of the aforesaid illegal wire taps and the information obtained through the illegal use of the aforesaid wire taps upon the trial" which petitioner imminently faces. The prayer asked that the defendants be enjoined "from proceeding. . . upon the indictments . . . on any grounds in which they may use wire tapping evidence, or on any grounds or investigations resulting from or instituted as a result of the aforesaid illegal wire taps."
There is no doubt that, once the wire-tap evidence is put in during the impending trial, petitioner is without remedy for the prejudice it does him in that trial, either in the state courts, People v. Variano, 5 N. Y. 2d 391, 157 N. E. 2d 857, or, under Schwartz v. Texas, supra, in the federal courts.
In Stefanelli v. Minard, 342 U. S. 117, the petitioner was charged with a violation of the state gambling laws. He sought to enjoin the use, at his trial, of evidence obtained by a police invasion of his home, an invasion admittedly in violation of the command of the Fourth Amendment. Relief was denied in the exercise of equitable discretion, three factors being relied on. First, the petitioner, it was said, could show no irreparable injury, for, at worst, he would go to jail on the evidence sought to be suppressed. Second, it was supposed that *462 the federal court was being asked "to intervene piecemeal to try collateral issues." At 123. Third, and overriding the first two, was the traditional reluctance of a federal court to meddle in state court proceedings, and especially in state court criminal proceedings.
The strongest expression of that reluctance is found in the general prohibition of federal injunctions "to stay proceedings in a State court." 28 U. S. C. § 2283. Although that provision bars an injunction operating on a party, after commencement of the state court proceedings, as well as an injunction directly against the state court, Harkrader v. Wadley, 172 U. S. 148; Ex parte Young, 209 U. S. 123, 161-162, it is not directly involved here. Here the thrust of the relief is only to enjoin the use of wire-tap evidence, not to enjoin the action itself. Hence there is no bar to maintaining the action. Cf. Rea v. United States, 350 U. S. 214. Where, as here, the relief sought is the adjudication of collateral matters which cannot be adjudicated in the state proceedings under state law, there is no occasion to invoke the statute. "That provision is an historical mechanism (Act of March 2, 1793, 1 Stat. 334, 335) for achieving harmony in one phase of our complicated federalism by avoiding needless friction between two systems of courts having potential jurisdiction over the same subject-matter." Hale v. Bimco Trading Co., 306 U. S. 375, 378. (Emphasis added.) Hence I do not reach the questions that would be raised if we had before us the alternative of enjoining the state action[3] or withholding all relief.
*463 Can the dangers of allowing this early resort to the federal court outweigh the wrong of subjecting petitioner to the risk of conviction and imprisonment on the strength of criminally obtained and criminally presented evidence? This is not a case where there is piecemeal resort from one court to another. This remedy is the only one which is available to protect a federal right.[4] It is not a case where an appeal is properly delayed, so that the asserted error may be seen in the context of the whole trial, as no review at all is available. For the same reason, this is no case for the exercise of equitable discretion. If the federal question is not now protected, it can never become the basis for relief.
The doctrine of equitable discretion properly involves no more than a choice among remedies, an orderly management of judicial procedures. Doubtless there are times when equity should leave parties to their remedy "at law," i. e., to their remedy in the ordinary course of the threatened proceeding. But once it is established *464 that the other proceeding offers no remedy, the rationale of equitable discretion disappears. It becomes no more than the legal language which clothes the denial of a right in the guise of a mere procedural decision. Unless and until Schwartz v. Texas, supra, is overruled, the exercise of equitable discretion to deny preliminary relief from the threatened use of wire-tap evidence is wholly unjustified. Unless and until Schwartz is overruled, the beneficent effect of § 605 will be stultified by the admission of tainted evidence in state trials. The privacy of the individual, history assures us, can never be protected where its violation by state officers meets with reward rather than punishment.
NOTES
[1] ". . . and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person . . . ." See Nardone v. United States, 302 U. S. 379; Nardone v. United States, 308 U. S. 338; Weiss v. United States, 308 U. S. 321; Benanti v. United States, supra; cf. Goldstein v. United States, 316 U. S. 114; Rathbun v. United States, 355 U. S. 107.
[2] Schwartz v. Texas, supra, stands for no more than a refusal, as a matter of federal law, to void a conviction said to be based on wiretap evidence. The witness who divulges wire-tap information is no less guilty of a federal crime. See Schwartz v. Texas, supra, 201. Nor, after Benanti, does the fact that New York purported to authorize this police wire tap save it from illegality. See In re Telephone Communications, 9 Misc. 2d 121, 170 N. Y. S. 2d 84; Matter of Interception of Telephone Communications, 23 Misc. 2d 543, 198 N. Y. S. 2d 572. As I indicated in my dissent in Schwartz v. Texas, supra, 205, I am of the opinion that a wire tap is a search within the meaning of the Fourth Amendment, so that, in the absence of illegality under § 605, I would have to consider if the New York wire-tap procedure meets the constitutional test of reasonableness. But under § 605, all wire taps are forbidden.
[3] 28 U. S. C. § 2283 provides for three classes of exception: (1) as expressly authorized by Act of Congress, (2) where necessary in aid of jurisdiction, and (3) to protect or effectuate its judgments. Cf. Toucey v. New York Life Ins. Co., 314 U. S. 118. Injunction against the commencement of state court criminal proceedings has long been the first line of defense for federally secured rights. As respects federally secured civil rights see, e. g., Truax v. Raich, 239 U. S. 33; Pierce v. Society of Sisters, 268 U. S. 510; Terrace v. Thompson, 263 U. S. 197; Hague v. C. I. O., 307 U. S. 496; cf. Douglas v. Jeannette, 319 U. S. 157. As respects federally secured economic rights see, e. g., Hynes v. Grimes Packing Co., 337 U. S. 86; Cline v. Frink Dairy Co., 274 U. S. 445; Hygrade Provision Co. v. Sherman, 266 U. S. 497.
[4] Judge Clark, dissenting in this case below, said: "In sum it is beyond dispute that there is a general, indeed universal, custom of federal law violation. Now this is a distressing situation, made not less so that in the eyes of many worthy citizens it is required by the asserted exigencies of successful law administration. But it is not an unusual situation. For actually it is a clash between federal and state governmental policies. As such it is a recurring struggle in our history and quite possibly a necessary one to a federal form of government. In the past we have found ways of meeting and solving the problem. Of course there are several forms of remedy; but the one to which there seems continual return when other remedies fail is the resort to the equity powers of the federal courts to enjoin repeated violations of the criminal law." 277 F. 2d, at 748-749.