**UNITED STATES of America ex rel. Cosme ROSADO, Petitioner-Appellant,**

v.

**Walter J. FLOOD, Warden of the Nassau County Jail, Respondent-Appellee.**

**No. 367, Docket 32056.**

United States Court of Appeals
Second Circuit.

Argued Feb. 7, 1968.

Decided April 24, 1968.

Irving Anolik, New York City, for petitioner-appellant.

George Danzig Levine, Asst. Dist. Atty. (William Cahn, Dist. Atty., County of Nassau, State of New York, on the brief), for respondent-appellee.

Before LUMBARD, Chief Judge, and WATERMAN and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Relator Cosme Rosado appeals from an order of the United States District Court for the Eastern District of New York, Jacob Mishler, J., which denied his application for a writ of habeas corpus. On December 1, 1967, appellant was held in contempt by the County Court of Nassau County for refusing to answer questions before a grand jury. Appellant was sentenced to thirty days in jail under Judiciary Law, McKinney's Consol. Laws, c. 30, § 750 et seq., but was advised that he could purge himself by testifying. As a result of various procedural moves, that sentence has not been

fully served, and appellant is now admitted to bail pending determination of this appeal.[1] For reasons given below, we affirm Judge Mishler's order denying the writ.

The facts leading to Rosado's refusal to answer are not in substantial dispute and can be briefly summarized. For some time, a Nassau County grand jury has been investigating organized crime, particularly gambling activities. Through the use of wiretaps obtained under court order pursuant to section 813–a of the Code of Criminal Procedure of New York, Rosado became known to the investigators. Rosado is the president of a labor union and has no prior criminal record. He was summoned to testify, under a grant of immunity, before the grand jury. The questions Rosado refused to answer apparently concerned the contents of intercepted telephone conversations to which he had been a party. Rosado claims that the District Attorney of Nassau County has disclosed recordings of these and other conversations to him and to others, including the press. Appellant argues that compelling him to reveal the substance of the conversations would be improper under the Federal Communications Act, 47 U.S.C. § 605,[2] and the federal constitution.

Rosado's brief eloquently argues that the state practice of allowing judicially authorized wiretaps is in conflict with section 605. The point hardly needs elaboration; most recently, it was the subject of opinions of the Supreme Court in Benanti v. United States, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126 (1957), and of this court in Pugach v. Dollinger, 275 F.2d 503 (2d Cir. 1960) (granting stay); Pugach v. Dollinger, 277 F.2d 739 (2d Cir. 1960) (en banc), aff'd, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678 (1961). However, even if we agree with appellant that the District Attorney has violated section 605, there is a substantial question whether because of that we could properly grant the writ under presently controlling law. Under Schwartz v. State of Texas, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231 (1952), evidence obtained in violation of section 605 may nonetheless be introduced in a criminal

---

1. Rosado's incarceration apparently began on December 20, 1967. Appellant moved for a stay of execution of the sentence before the Appellate Division and the New York Court of Appeals, and relief was denied by both courts. He then sought a writ of habeas corpus from Judge Mishler, who denied the writ, as well as a certificate of probable cause and bail pending appeal. On January 16, 1968, this court granted a certificate of probable cause, set bail at $500, and ordered an expedited appeal.

2. That section provides:
No person receiving or assisting in receiving, or transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, to any person other than the addressee, his agent, or attorney, or to a person employed or authorized to forward such communication to its destination, or to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, or to the master of a ship under whom he is serving, or in response to a subpena issued by a court of competent jurisdiction, or on demand of other lawful authority; and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; and no person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by wire or radio and use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto; and no person having received such intercepted communication or having become acquainted with the contents, substance, purport, effect, or meaning of the same or any part thereof, knowing that such information was so obtained, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of the same or any part thereof, or use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto * * *.

trial in a state court. The rationale of that decision was

that despite the plain prohibition of Section 605, due regard to federal-state relations precluded the conclusion that Congress intended to thwart a state rule of evidence in the absence of a clear indication to that effect.

Benanti v. United States, 355 U.S. 96, 101, 78 S.Ct. 155, 2 L.Ed.2d 126 (1957). And under Pugach v. Dollinger, supra, we may not enjoin the District Attorney from using wiretap evidence at trial. Moreover, federal prosecutors have shown no apparent interest in violations of section 605 by state officers, despite some strong suggestions by the courts. E. g., Pugach v. Dollinger, 277 F.2d at 746 (Waterman, J., concurring). Cf. People v. Kaiser, 21 N.Y.2d 86, 286 N.Y. S.2d 801, 814, 233 N.E.2d 818 (N.Y. 1967), cert. granted, 390 U.S. 1023, 88 S. Ct. 1436, 20 L.Ed.2d 281 (1968). So long as that state of the law remains unchanged, however much some of us might disagree with it, a strong case can be made that we must affirm here; the argument would be that if we should not interfere with the use of wiretap evidence at a state trial, *a fortiori* we should not interfere with the collection of the evidence here by the Nassau County grand jury.

It is true that the law on electronic eavesdropping generally is in flux. In Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the Supreme Court recently held that "electronically listening [to] and recording" one end of a telephone conversation can be an unconstitutional "search and seizure" under the fourth amendment, even though there was no physical intrusion into a protected area. See also grant of certiorari in Lee v. Florida, 389 U.S. 1033, 88 S.Ct. 762, 19 L.Ed.2d 820 (1968). If we had to deal with the effect of *Katz* on this case, we would be faced with such issues as to what extent, if any, that decision is retroactive, cf. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); compare Berger v. State of New York,

388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), with People v. Kaiser, supra; see also Desist v. United States, 390 U.S. 943, 88 S.Ct. 1030, 19 L.Ed.2d 1131 (1968) (granting certiorari), and whether the wiretapping here accorded with the procedural safeguards required by *Katz*. A further complication would be that Judge Mishler held that Rosado orally waived any fourth amendment claim, and an examination of the record indicates that the oral argument in the district court did center around the effect of section 605 rather than the constitutional question.

■ However, we do not find it necessary to resolve these difficult issues. Rosado is not, nor apparently is he likely to be, an indicted defendant; he is merely a witness before a grand jury. It has traditionally been held that such a witness usually cannot impede collection of evidence by the grand jury even though the issues he seeks to raise could later be litigated—perhaps with success—by an indicted defendant; e. g., Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919) (constitutionality of statute whose violation grand jury is investigating); United States v. Neff, 212 F.2d 297 (3d Cir. 1954) (improper venue). See United States v. Masterson, 383 F.2d 610 (2d Cir. 1967). The rationale of this doctrine is that the scope of a grand jury inquiry "is not to be limited narrowly," Blair v. United States, 250 U.S. at 282, 39 S.Ct. at 471, because it is "an important investigative instrument." United States v. Cleary, 265 F.2d 459, 461 (2d Cir.), cert. denied, 360 U.S. 936, 79 S.Ct. 1458, 3 L.Ed.2d 1548 (1959); see United States v. Winter, 348 F.2d 204 (2d Cir.), cert. denied, 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1965). Rosado relies on United States v. Tane, 329 F.2d 848 (2d Cir. 1964), in which this court affirmed the dismissal of an indictment because it was based on an unlawful wiretap. In that case, the indictment rested almost exclusively on the testimony of a witness before the grand jury whose identity and willingness to testify

were both the product of the wiretap. But in *Tane*, it was the defendant, not the grand jury witness, who successfully moved to dismiss. Whatever remedy might be available either to suppress evidence obtained through wiretaps, cf. In re Fried, 161 F.2d 453, 1 A.L.R.2d 996 (2d Cir.), cert. denied, 331 U.S. 858, 67 S.Ct. 1751, 91 L.Ed. 1865, cert. granted, 331 U.S. 804, 67 S.Ct. 1755, 91 L.Ed. 1826, cert. dismissed, 332 U.S. 807, 68 S.Ct. 105, 92 L.Ed. 384 (1947); United States v. Klapholz, 230 F.2d 494 (2d Cir.), cert. denied, 351 U.S. 924, 76 S.Ct. 781, 100 L.Ed. 1454 (1956); Grant v. United States, 282 F.2d 165 (2d Cir. 1960), or to challenge an indictment based on such evidence, we do not feel justified on these facts in preventing the grand jury from requiring witness Rosado to answer questions before it.[3] United States v. McClosky, 273 F.Supp. 604 (S.D.N.Y.1967).

Respondent offers a number of additional reasons why habeas corpus relief is unavailable to petitioner; e. g., Rosado has not exhausted state remedies;[4] since Rosado can purge himself by testifying, his detention is voluntary. However, we need not consider these arguments in view of our disposition of the case. Rosado claims that he will be compelled to violate section 605 himself if he testifies and that no state grant of immunity can protect him; his theory is that he will thereby be aiding and abetting the prosecutor's violation. The point was not pressed at oral argument, but we have considered it. On the sketchy record before us, we cannot be sure what questions Rosado has refused to answer, but we assume, as Judge Mishler did, that they deal with conversations to which he was a party. By disclosing, under the compulsions present here, the contents of those, Rosado will not be criminally liable.

Judgment affirmed.

[3.] In view of the grant of immunity and our conclusion that Rosado himself will not be violating § 605, see discussion infra, there is no remaining problem of self-incrimination raised by appellant.

LUMBARD, Chief Judge (concurring):

I concur in affirming the denial of the writ of habeas corpus because I find no merit to Rosado's argument that he is in State custody in violation of federal law.

The transcript of the hearing in the district court shows that Rosado is in state custody for refusing to answer questions before a Nassau County grand jury concerning the contents of telephone conversations to which he was a party. Since the District Attorney concededly obtained knowledge of these conversations and their contents pursuant to § 813–a of the New York Code of Criminal Procedure, and but for these wiretaps would not have asked the questions which Rosado has refused to answer, Rosado argues that he would be committing the federal crime of aiding and abetting the disclosure of wiretap information if he were to answer the questions which were put to him.

However, Rosado in answering the questions could not be guilty of aiding and abetting the commission of a federal crime. In order to aid and abet another to commit a crime, it is necessary that one "in some sort associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seek by his action to make it succeed." United States v. Peoni, 100 F.2d 401, 402 (2 Cir. 1938). Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949); United States v. Manna, 353 F.2d 191, 192 (2 Cir. 1965). It is clear to me that a reluctant witness before a grand jury who testifies under the threat of punishment for contempt as to the contents of telephone conversations to which he was a party is not a willing participant in an alleged scheme to violate § 605 so as to be an aider and abettor of the scheme. Furthermore, the majority opinion ably

[4.] Judge Mishler held that petitioner had exhausted state remedies despite respondent's claim that an Article 78 proceeding was still available. Cf. note 1 supra.

explains why we would not interfere with a grand jury's power to compel a witness to testify in a situation such as this.

Since Rosado does not claim that he is in custody in violation of his constitutional rights and we do not find that he is in custody in violation of the laws of the United States, I concur in affirming the district court's decision denying the petition.