No. 71–5912. Williamson et al. *v.* United States. C. A. 5th Cir. Certiorari denied. Mr. Justice Brennan would grant the petition and set case for argument.

Mr. Justice Douglas, dissenting.

Petitioners were suspected of maintaining an illicit whiskey still in violation of federal tax statutes. To secure evidence against them the Treasury Department

planted in their midst an undercover agent who posed as a truck driver of their vendee. After gaining their confidence, this agent on 17 occasions in 1968, after our decision in *Katz* v. *United States,* 389 U. S. 347, telephoned either petitioner James Williamson or a coconspirator, one Hutcheson, for the ostensible purpose of finalizing arrangements for the delivery of their product. During their conversations, the agent was in a position to shape and guide the content and direction of their discussions and to elicit damaging admissions. All of these communications were intercepted and recorded by another federal officer who acted without a warrant and without the petitioner's knowledge but, of course, with the full cooperation of the Treasury plant. After the officers obtained satisfactory evidence against the pair, they were arrested, indicted, and convicted after a trial, at which all of the recordings were played, over objection, for the jury.

As I have discussed before, electronic eavesdropping early crept into our law as a means of combating "fifth column" activities during wartime.[1] Later, it was said that this weapon was essential in the battle against organized crime. Now we learn that the omnipresent electronic ear is stalking the hill country in search of moonshiners. Apparently, no suspect is too unimportant to escape its reach.

Nor is any person too important to be excluded from the Government's dossiers. Information recently presented to the Senate Subcommittee on Constitutional Rights discloses that subjects of Army intelligence oper-

---

[1] See Appendix I to my dissent in *United States* v. *White,* 401 U. S. 745, 766–767. I have expressed in more detail than here my opposition to various forms of electronic spying in *Katz* v. *United States,* 389 U. S. 347; *Berger* v. *New York,* 388 U. S. 41; *Osborn* v. *United States,* 385 U. S. 323; *Pugach* v. *Dollinger,* 365 U. S. 458; *Silverman* v. *United States,* 365 U. S. 505; *On Lee* v. *United States,* 343 U. S. 747.

ations have included Senators Fred Harris, Harold Hughes, Edward Kennedy, George McGovern, and Edmund Muskie.[2]  The list also included five United States Representatives[3] and four Governors.[4]  Indeed, the electronic ear was said to have turned on a Justice of this Court.[5]  The Subcommittee found that the catalogue of organizations that had been subjected to surveillance embraced the NAACP, the ACLU, Operation Breadbasket, the Urban League, and the States' Rights Party.[6] Its hearings also revealed that Army spies had infiltrated Resurrection City,[7] the Poor People's Campaign,[8] both nominating conventions in 1968,[9] black studies programs,[10] and anti-war groups.[11]

Senator Ervin, who chaired these hearings, warns this Court in an *amicus* brief in another case, that "it is not an exaggeration to talk in terms of hundreds of thousands of individuals, organizations, events, and dossiers."[12]

After related hearings concerning federal wiretapping, Senator Edward Kennedy only months ago warned his

---

[2] N. Y. Times, Feb. 29, 1972, p. 1, col. 3.

[3] *Id.*, at cols. 3–4.  The list named Representatives Philip Crane, John Rarick, and Don Edwards, and former Representatives Adam Clayton Powell and Allard Lowenstein.

[4] *Id.*, at col. 4.  The list named Governors Sargent of Massachusetts and Curtis of Maine; former Governors Hoff of Vermont and Kerner of Illinois; and Lieutenant Governor Hayes of Vermont.

[5] *Id.*, at col. 4.

[6] Amicus Curiae Brief submitted by Senator Sam Ervin, Jr., Chairman of the Subcommittee on Constitutional Rights, in *Laird* v. *Tatum*, No. 71–288, O. T. 1971, p. 10.

[7] Federal Data Banks, Computers and the Bill of Rights, Hearings before the Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary, 92d Cong., 1st Sess., pt. 1, pp. 197–198 (1971).

[8] *Id.*, at 197.

[9] *Id.*, at 198–200.

[10] *Id.*, at 201, 296.

[11] *Ibid.*

[12] Amicus Brief, *supra*, n. 6, at 8.

colleagues of "the frightening possibility that the conversations of untold thousands of citizens of this country are being monitored on secret devices which no judge has authorized and which may remain in operation for months and perhaps years at a time." [13]

Although the problem is an enormous and recurring one, our decisions have not articulated a coherent response. Ironically, if petitioner James Williamson had confided in a genuine confederate rather than in a spy, there would be no doubt that the warrantless seizure of his telephonic communications would have offended *Katz* v. *United States, supra.* It was said, however, by a plurality in *United States* v. *White,* 401 U. S. 745, that speakers simply must assume the risk that their confidants may tattle, and, therefore, they should assume the further risk that every word they utter will be instantaneously fed into a recorder. Yet there is a significant "qualitative difference" between electronic surveillance and conventional police stratagems such as eavesdropping and disguise. *Lopez* v. *United States,* 373 U. S. 427, 465 (dissenting opinion). That chasm cannot be bridged simply by invoking the conclusory proposition that one must assume the risk of being subjected to electronic surveillance. Under that reasoning we might also have held that Katz should have assumed the risk that his telephone booth was bugged. Obviously, citizens must bear only those threats to privacy which we decide to impose.

The ruse employed by the Government in this case has still a further offensive characteristic. Here the agents had the opportunity not only to destroy a petitioner's privacy but to interrogate him in a clandestine fashion without the warnings required by *Miranda* v. *Arizona,* 384 U. S. 436, without the assistance of counsel, and

---

[13] Letter to members of the Subcommittee on Administrative Practice and Procedure of the Senate Committee on the Judiciary, from Senator Edward Kennedy, Dec. 17, 1971, pp. 2–3.

without knowledge that every word he spoke would be replayed to a court. Yet under the plurality reasoning in *White* such deception is permitted. Thus, both *Katz* and *Miranda* can be circumvented through the simple expedient of injecting a secret agent into a suspect situation.

I would grant this petition.