Nathah B. Sobee, J.
The principal issue (one not heretofore decided by an appellate court) presented by these motions to suppress (Code Crim. Pro., § 813-c) and to dismiss the indictment, is: 11 May an ex parte order for eavesdropping (Code Crim. Pro., § 813-a) serve the function of a search warrant under the Warrant Clause of the Fourth Amendment to authorise a physical invasion (trespass) upon a constitutionally protected area in a ‘ search ’ for conversationsf ”
Other subsidiary constitutional issues are raised. But these are well settled, if not by decision of the appellate courts in this State, by the decisions of the United States Supreme Court made applicable to this State by the Fourteenth Amendment (Ker v. California, 374 U. S. 23).
THE FACTS
The facts as stipulated (see opinion, N. Y. L. J., Dec. 17, 1964, p. 17, col. 6) and as found at the hearings (Jan. 22, 25 and Feb. 1, 1965) are chronologically as follows:
A larceny of jewelry by false pretenses had been committed in late 1962. I find that there was ‘1 reasonable ground to believe ’ ’ (Code Crim. Pro., § 813-a) that the defendant Michael Scandifia was implicated in that crime. On the basis of a necessary affidavit an eavesdropping order was issued from the Supreme Court, New York County, on March 13, 1963, authorizing the installation of an eavesdropping device (hereinafter referred to as a “ bug ”) in a service station owned by defendant Scandifia at 446 Coney Avenue, Brooklyn,. This place of business, I rule, is a “ constitutionally protected area” (Lansa v. New York, 370 U. S. 139, and cases cited).
The “bug” was shortly thereafter installed in the private office of defendant Scandifia in the service station premises. This was accomplished by the police by a physical intrusion, i.e., by “breaking” into the premises in the early morning hours. By means of a listening device in nearby premises, the police overheard and recorded all conversations which took place in the private office (including one side of all telephone conversations) for a period of five months. Successive extensions of the original eavesdropping order were obtained based on substantially the same affidavits which supported the original order. No new “ probable cause ” was stated.
*561 While the “bugging” of the Seandifia premises was in progress, an order was obtained for the 11 bugging ’ ’ of the business premises of one Peter Ferrara (indicted with above-named defendants but never apprehended) at 1253-65th Street, Brooklyn. This “ bug ” was also installed by a physical intrusion upon constitutionally protected premises and was continued for some time. This order signed by another Supreme Court Justice, New York County, dated May 29, 1963, named the crimes under investigation as conspiracy, coercion and “ shy-locking ”. Unlike the Seandifia order these orders were supported by affidavits which do not allege even a shred of “ reasonable ground ” or “ probable cause ”. These affidavits are precisely the same as the affidavits condemned by the Supreme Court in Aguilar v. Texas (378 U. S. 108). My finding in this regard with respect to the second, i.e., the Ferrara “ bug ” has minor significance since evidently little was overheard bearing on the instant indictment.
If any conversations which bear on the “original” crimes (i.e., the jewelry larceny or the shylocking) were overheard this was not disclosed to me or to the Grand Jury. (See however, p. 132 of hearing.) As is usually the case (at least from my own observations and experience) the eavesdropping disclosed an “unrelated” crime.[1] The “unrelated” crime conversations were as follows (see pp. 97-101 of hearing):
“ On July 19, 1963 the defendant Seandifia was overheard discussing with defendant Grossman two pistols for which Seandifia desired to obtain bullets.
“ On July 23,1963 in a conversation overheard between these defendants it was made obvious that Grossman was being given the two pistols in order to obtain the bullets.”
On July 24,1963, an officer presented an affidavit setting forth the aforesaid overheard “ conversations ” and obtained a search warrant for an automobile owned by Grossman. The search warrant was executed the following day and the pistols recovered. Except for some extraordinary events connected with the conduct of the search (see my opinion N. Y. L. J., Dec. 17, 1964, p. 17, col. 6) I find the search warrant was lawfully executed.
The real issue however is whether there was probable cause from an untainted source to authorize the issuance of the search warrant. All of the probable cause alleged in the affidavit was obtained as a result of the court-ordered eavesdropping. Only *562 if the eavesdropping was lawful and constitutional by Federally commanded standards may the search warrant be sustained and the motion to suppress the tangible (two pistols) product of the search be denied.
The District Attorney contends that the eavesdropping was made constitutional by the court order. The defendants contend that it was not.
I
EAVESDROPPING ACCOMPLISHED BT A TRESPASS
It requires no extended discussion to establish that eavesdropping or “ bugging ”, accompanied by a trespass, constitutes an unreasonable search and seizure in violation of the Fourth Amendment (see extensive discussion in Sobel “ Current Problems in the Law of Search and Seizure”, pp. 98-114). The law is clear that the Fourth Amendment is violated when an electronic device or “bug” is planted (1) by an unlawful physical invasion of (2) a constitutionally protected area. In the instant case ‘‘ breaking and entering ’ ’ constitutes an unlawful physical invasion; a business office is a constitutionally protected area.
Silverman v. United States (365 U. S. 505) is of course the leading case. But the central holding may be found in earlier cases. (Olmstead v. United States, 277 U. S. 438, 444 [wiretapping without physical invasion] ; Goldman v. United States, 316 U. S. 129 [detectaphone without an unauthorized physical encroachment]; On Lee v. United States, 343 U. S. 747 [microphone on person of an invitee or guest].)
In Silverman (supra, pp. 511-512) a spike microphone was driven into the wall of the defendant’s premises. The court was unanimous in holding: ‘ ‘ The Fourth Amendment, and the personal rights which it secures, have a long history. At the very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion. Entick v. Carrington, 19 Howell’s State Trials 1029, 1066; Boyd v. United States, 116 U. S. 616, 626-630. This Court has never held that a federal officer may without warrant and without consent physically entrench into a man’s office or home, there secretly observe or listen, and relate at the man’s subsequent criminal trial what was seen or heard. ’ ’ Upon an identical state of facts, only last term, the court in a Per Curiam opinion reversed a Virginia judgment of conviction. (Clinton v. Virginia, 377 U. S. 158.)
*563 In Wong Sun v. United States (371 U. S. 471) no “ eavesdropping ” was involved. The police broke into a store and obtained damaging admissions from the owner. The court said (pp. 485-486): “It follows from our holding in Silverman v. United States, 365 U. S. 505, that the Fourth Amendment may protect against the overhearing of verbal statement as well as against the more traditional seizure of 1 papers and effects. ’ Similarly, testimony as to matters observed during an unlawful invasion has been excluded in order to enforce the basic constitutional policies * * # [n]or do the policies underlying the exclusionary rule invite any logical distinction between physical and verbal evidence. Either in terms of deterring lawless conduct by federal officers * * * or of closing the doors of the federal courts to any use of evidence unconstitutionally obtained * * * the danger in relaxing the exclusionary rules in the case of verbal evidence would seem too great to warrant introducing such a distinction.” (Italics added.) Later, in Lopez v. United States (373 U. S. 427, 460), the court said: “We have held that the fruits of electronic surveillance, though intangible, nevertheless are within the reach of the Amendment * # * Indeed, only the other day we reaffirmed that verbal fruits, equally with physical, are within the Fourth. Wong Sun v. United States, 371 IT. S. 471, 485-486.” (Italics added.) Speaking of electronic eavesdropping the court further stated (pp. 438-439): “ The Court has in the past sustained instances of 1 electronic eavesdropping ’ against constitutional challenge, when devices have been used to enable government agents to overhear conversations which would have been beyond the reach of the human ear. See, e.g., Olmstead v. United States, 277 IT. S. 438; Goldman v. United States, 316 IT. S. 129. It has been insisted only that the electronic device not be planted by an unlawful physical invasion of a constitutionally protected area. Silverman v. United States, supra.” (Italics added.)
See, also, to the same effect Cullins v. Wainwright (328 F. 2d 481, cert. den. 379 U. S. 845); United States v. Stone (232 F. Supp. 396; People v. Cahan (44 Cal. 2d 434); People v. Berger (44 Cal. 2d 459); People v. Tarantino (290 P. 2d 505 [Cal.]).
Indeed so well settled is the law in this respect that I do not discuss the problem of the ‘ interplay ’’ (between the 1st, 4th, 5th and 6th Amdts.) should the law be to the contrary (Escobedo v. United States, 378 U. S. 478; Massiah v. United States, 377 U. S. 201; Marcus v. Search Warrant, 367 U. S. 717, 724; Stanford v. Texas, 85 S. Ct. 506, 511).
*564 II
THE PRIMARY TAINT DOCTRINE
Information obtained as a result of an unlawful or unconstitutional invasion or trespass upon private premises cannot furnish the probable cause upon which a lawful search [or arrest] warrant may be obtained. (Silverman v. United States, 365 U. S. 505, 507, supra; People v. O’Neill, 11 N Y 2d 148.) This widely accepted rule that tainted evidence poisons all other evidence derived therefrom (derivative evidence) is commonly referred to as the “ fruit of the poisonous tree ” or “ primary taint” doctrine. It has many diverse aspects but the fundamental principle is that to forbid the direct use of unlawful evidence yet put no curb on its full indirect use would only invite lawlessness which the constitutional provisions are intended to deter.
Silverman v. United States (365 U. S. 505, 507, supra), is directly in point. For a period of three days police listened through the spike mike. Conversations thus overheard were used to obtain a search warrant that in turn produced evidence which resulted in the conviction. The judgment was reversed since the evidence used was tainted by the primary illegality of the original trespass.
In another of its many aspects the “ primary taint ” rule was stated by our Court of Appeals in People v. Rodriguez (11 N Y 2d 279, 286) as follows: “If * * * any of his statements
were the product or fruit of an illegal search and seizure, they should have been excluded; the rule announced in Mapp v. Ohio (367 U. S. 463) renders inadmissible not only the items obtained, but any evidence which stems from their use. As the Supreme Court put it, ‘ The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court that it shall not be used at all * * * If knowledge of [facts] is gained from an independent source they may be proved like any others but the knowledge gained by the Government’s own wrong cannot be used by it in the way proposed. (Silverthorne Lbr. Co. v. United States, 251 U. S. 385, 392; see, also, Costello v. United States, 365 U. S. 265, 278-280; Walder v. United States, 347 U. S. 62, 64 — 65; Nardone v. United States, 308 U. S. 338, 340-341.) In short, the exclusionary rule covers not only the evidence illegally obtained, but the product of the unlawful search as well. The underlying rationale is that the government may not violate the constitutional guarantee (U. S. Const., 4th Arndt.) and ‘ use the fruits of such unlawful conduct to secure *565 a conviction.’ (Walder v. United States, 347 U. S. 62, 64-65, supra.) And, obviously, it matters not that these fruits ’ happen to be confessions rather than some other type of evidence. (Cf. Costello v. United States, 365 U. S. 265, 278-280, supra.) ”
In still another aspect, it was stated by our Court of Appeals in People v. Robinson (13 N Y 2d 296, 301) as follows: “ [W]e are compelled by decisions of the United States Supreme Court to apply the rule that, if the evidence to which the objection is made was acquired by the exploitation of the primary illegality, such evidence must also be excluded ” (Wong Sun v. United States, 371 U. S. 471, 488).
For example, in a very recent ease (United States v. Tane, 329 F. 2d 848) the identity of a witness was discovered through an unlawful wiretap. Confronted with the wiretap, the witness testified for the Government. Since the identity of the witness was discovered by means of the unlawful conduct of the Government agents, his testimony was ruled to be tainted. It was stricken and the indictment dismissed.
With respect to other aspects of the primary taint doctrine see Fahy v. Connecticut (375 U. S. 85 [unreasonable search induced confession]); People v. Ditsen (57 Cal. 2d 415 [an involuntary confession tainted later search and seizure]); People v. Donovan (13 N Y 2d 148 [ditto]); People v. Albea (118 N. E. 2d 277 [Ill.] [trespass tainted other derivative evidence] ); Bewley v. State (347 S. W. 2d 40 [Tenn.] [ditto]); Staples v. United States (320 F. 2d 817 [ditto]); Hollingsworth v. United States (321 F. 2d 342 [ditto]).
* * *
Since the ‘ ‘ bug ’ ’ in the instant case was planted by an unlawful physical intrusion in a constitutionally protected area, any evidence resulting therefrom was obtained in violation of the Fourth Amendment. (Silverman v. United States, supra.) Under the “ primary taint ” doctrine such evidence may not be used at all. It surely may not be used to furnish the only probable cause for the issuance of a search warrant. (Silver-man v. United States, supra; Silverthorne Lbr. Co. v. United States, 251 U. S. 385, supra; People v. Robinson, 13 N Y 2d 296, supra; People v. Rodriguez, 11 N Y 2d 279, supra; People v. O’Neil, 11 N Y 2d 148, supra.)

* * *

None of the fundamental — i.e., constitutional — principles heretofore discussed (Parts I and II) is disputed by the People. Indeed these cannot be for all are too well established.
*566 New York however is somewhat unique in that it has enacted a statute (Code Crim. Pro., §§ 813-a, 813-b) which authorizes Court-ordered eavesdropping. The main contention of the People is that such a court order serves in lieu of a search warrant to authorize “trespass” plus “seizure” of .“ conversations ”.
This is the principal issue in this case.
Ill
STATE C0TJRT-0BDERED ELECTRONIC EAVESDROPPING
The Fourth Amendment provides: ‘ ‘ The right of the people to be 'secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, amd particularly describing the place to be searched and the persons or things to be seised.” (Italics added.)
The italicized is the “ Warrant Clause ”.[2]
New York’s constitutional provision is identical with the Fourth Amendment (art. I, § 12). The exclusionary rule however is commanded upon the States by the Fourth via the Fourteenth (Mapp v. Ohio, 367 U. S. 643; Ker v. California, 374 U. S. 23, supra). Therefore Federal standards as fixed by the Supreme Court govern the States in determining the constitutionality of eavesdropping legislation.
The New York statute (Code Grim. Pro., § 813-a) which the prosecution seeks to “ equate ” with the requirements of the Warrant Clause of the Fourth Amendment, in pertinent part, reads: “ An ex parte order for eavesdropping # * * may be issued by any justice of the supreme court or judge of a county court * * * upon oath or affirmation of a district attorney * * * or of an officer above the rank of sergeant of any police department * * * that there is reasonable ground to believe that evidence of crime may be thus obtained, and particularly describing the person or persons whose communications * * * are to be overheard ’ ’.
*567 Thus, as required by the Warrant Clause of the Fourth Amendment, the eavesdropping statute also requires a court order upon oath or affirmation establishing probable cause.[3]
With respect to specificity of description (see Stanford v. Texas, 85 S. Ct. 506) the Fourth Amendment requires that the place to be searched and the thing to be seized, be described. The statute only requires a description of the person whose communications are to be overheard. Despite the fact that the statute in terms does not require description of the place to be “ bugged ”, most court orders, as do the instant orders, specify the place. (See People v. Rainey, 14 N Y 2d 35.)

* * *

1. SPECIFICITY OF DESCRIPTION OF THINGS OR CONVERSATIONS
I discuss the requirement of specificity of description briefly. It is not the main constitutional point.
A search warrant under the Warrant Clause of the Fourth Amendment must in advance of the search specify with particularity the things to be seized. Obviously, a State eavesdropping order cannot specify with particularity in advance the conversations or verbal statements to be seized. The instant case is a prime example. The eavesdropping order was issued to “ seize ” conversations concerning the crime of grand larceny. It resulted in the ‘ ‘ seizure ’ ’ instead of conversations concerning totally “ unrelated ” crimes of possession of weapons, etc. Obviously since the police could not know in advance, they could not specify in advance the conversations to be “ seized ”.
The governing constitutional principle is stated succinctly in Marron v. United States (275 U. S. 192, 196): “ The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what may be taken, nothing is left to the discretion of the officer executing the warrant.” (See, also, Stanford v. Texas, 85 S. Ct. 506; Ventresca v United States, 324 F. 2d 864; Comm. v. Dorius, 191 N. E. 2d 781 [Mass.]; Comm. v. Jacobs, 191 N. E. 2d 873 [Mass.]; State v. Calabro, 195 A. 2d 897 [N. J.].)
Electronic eavesdropping is necessarily indiscriminate. It listens in on all conversations; those between husband and wife; lawyer and client (see State v. Cory, 382 P. 2d 1019 [Wash.]); *568 physician and patient, as well as all social discourse between family and friends. Technologically no electronic device has as yet been discovered which shuts itself off to all social discourse and turns itself on when the conversation turns to criminal ends. In consequence advance specificity of description of the verbal statements to be seized is impossible. A “search warrant” which specifies as does the instant order, “ any and all conversations, communications and discussions ” is a general warrant. As noted recently in Stanford v. Texas (85 S. Ct. 506, 511): “ The indiscriminate sweep of that language is constitutionally intolerable. To hold otherwise would be false to the terms of the Fourth Amendment, false to its meaning, and false to its history.” This factor alone would make any eavesdropping order unconstitutional.
^ # -Xs
2. PROBABLE CAUSE
I discuss this issue only briefly.
I have ruled that there existed ample probable cause for the issuance of the first court order for eavesdropping (the Scandifia “bug”). The order was issued however on March 13, 1963. The conversations were “ seized” on July 19, 1963, some four months later. No new probable cause was furnished in the interim. Probable cause for the issuance of a search warrant must exist at the time of its issuance. (Sgro v. United States, 287 U. S. 206, 215-216; United States v. Di Re, 332 U. S. 581, 592; Dumbra v. United States, 268 U. S. 435, 441.) It is for that reason that our search warrant statute (Code Crim. Pro., § 802) requires that a search warrant be executed “ within ten days ” and “ [a]fter the expiration of such time, the warrant * # * is void.” To be extended there must be a showing of “intervening facts disclosing continuing cause ” (People v. Chippewa Circuit Judge, 226 Mich. 326, 328). None of this is shown. I make no special point of this.
But probable cause is an “absolute” of a search warrant. Probable cause must be directed toward establishing (1) the commission of a specific crime and (2) that the fruits of or instrumentalities used in the commission of that crime may be found in a specific place. All of the probable cause for the issuance of the instant eavesdropping order was directed toward one crime (grand larceny) and the “ conversations ” seized were those concerning an ‘ ‘ unrelated ’ ’ crime.
If indeed an eavesdropping order is to be equated with the search warrant as required by the Fourth Amendment, then *569 there must be probable cause for a specific crime not crime in general. Surely no 1 ‘ Magistrate ’ ’ on the basis of the affidavit supporting the eavesdropping order could have or would have issued a search warrant for weapons. If no search warrant could issue by virtue of the Fourth Amendment then no eavesdropping order under the identical requirements of the Fourth could issue.
It is one thing while executing a search warrant to make an arrest and incidental search for an 11 unrelated ” crime. The incidental search is justified by the arrest.
But an unrelated crime overheard by means of a “ bug ” does not result in a contemporaneous arrest and incidental search. Thus an “ unrelated ” search can never be justified.
The eavesdropping orders must fall for that reason. (State y. Kline, 42 N. J. 135.)
* * *
I do not rest my decision on grounds (1) and (2) discussed under Part III.
I prefer to rest it on the main constitutional issue raised herein — “May a search warrant or a court-ordered electronic search be directed toward tangibles which are mere evidence or intangibles, i.e., conversations or verbal statements, which are mere evidenced ”
3. FRUITS, INSTRUMENTALITIES AND CONTRABAND VS. MERE EVIDENCE
Most search warrant statutes enacted to implement the Fourth Amendment and its State counterparts limit the warrant (a) to fruits of a crime; (b) to instrumentalities used in the commission of a crime, and (c) to contraband which it is unlawful to possess (Code Grim. Pro., § 792; Fed. Rules Grim. Pro., rule 41). In 1962 (ch. 542) the New York statute was amended to include ‘ ‘ property constituting evidence of crime ’ ’.
Ours was the very first State, after Mapp v. Ohio (367 U. S. 643, supra) commanded Federal standards upon the States, to enact a search warrant statute permitting a search for mere evidence. The State Combined Council of Law Enforcement Officials which sponsored the legislation merely pointed to a few western States which had had such a statute for many years. Indeed before Mapp such statutes were constitutional since neither the Fourth Amendment nor the “ exclusionary rule ” was commanded upon the States. Courts in most States, including our own, did not inquire how evidence was obtained. Mapp compelled us to do so. (See “ A Comment on Search and Seizure ”, the Pleader, 1962, pp. 1-22.)
*570 But in the Federal jurisdiction a search for mere evidence was never heard of. A long history of Supreme Court decisions negated such a right. The decisions were based on the interplay between the Fourth Amendment’s right of privacy and the Fifth Amendment’s privilege against self incrimination — both now commanded upon the States, ex proprio vigore (Mapp v. Ohio, supra; Malloy v. Hogan, 378 U. S. 1,11).
# * *
If a search warrant may be issued for tangibles, i.e., papers, books and records, which are mere evidence, then perhaps there is justification for authorizing by court order the search and seizure of intangibles, i.e., conversations and verbal statements —which are also mere evidence.
Therefore the main constitutional issue upon which this decision, I expect, will turn is — “ May a search for conversations or verbal statements, which constitute evidence only of guilt, be constitutionally authorised under the Fourth and Fifth Amendments? ”
At common law search warrants were restricted to stolen goods (fruits of a crime). An attempt to broaden the product of search to include evidence led to the landmark case of Entick v. Carrington (19 Howell’s 'State Trials 1029,1073):
“ Lastly it is urged as an argument of utility, that such a search is a means of detecting offenders by discovering evidence. I wish some cases need have been shown, where the law forceth evidence out of the owner’s custody by process * * * In the criminal law such a proceeding was never heard of * * *.
# * *
“ It is very certain that the law obligeth no man to accuse himself; * * * and it would seem that a search for evidence is disallowed on the same principle.”
Following the adoption of the Fourth Amendment, Congress broadened the authority of the search warrant statutes to contraband, e.g., unpaid liquors (1789), smuggled goods (1863), obscene literature (1894) and counterfeit money (1901). The statutes were limited to contraband which it was unlawful to possess and which was therefore deemed not to be the property of the person searched. The Grovernment justified its right to seize contraband on the basis that what did not belong to one could be seized without violating one’s privilege against self incrimination.
However it was not until 1917 (ch. 30, tit. XI, 40 TJ. S. Stat. 228) that a general search warrant statute was enacted to include stolen property (fruits of a crime) and “ instrumen *571 talities ” used in the commission of a crime. Congress justified the inclusion of “ instrumentalities ” on the theory that the use rendered them forfeit to the Government.
These theories which justified seizing under a search warrant only certain limited kinds of “ property ” to be used as evidence was designated the “ primary right ” theory.
The “ primary right ” theory is first stated in Boyd v. United States (116 U. S. 616, 623 [1885]): “ The search for and seizure of stolen or forfeited goods, or goods liable to duties * * * are totally different things from a search for and seizure of a man’s private books and papers for the purpose of obtaining information therein contained, or of using them as evidence against him. The two things differ toto ccelo. In the one case, the government is entitled to the possession of the property; in the other it is not.” (Italics added.)
The Oregon Supreme Court, more recently, put the “ primary right ’ ’ theory succinctly: 1 ‘ The type of evidence which may legitimately be seized extends only to property which does not belong to the possessor or whose right to possession has been forfeited in some manner recognizable under the law. Such forfeiture may be brought on either by using or planning to use the property in the commission of a crime. The ancient property notion that the use of an object for an evil purpose renders it forfeit seems to have retained some of its force in this field.” (State v. Chinn, 373 P. 2d 392 [Ore.].) (Note: A learned dissent by Mr. Justice O’Connell, delves more deeply into the reasons for the limitations in the statute as well as the distinction between “ instrumentalities ” and “ mere evidence ”.)
Our earliest cases of course discussed the “ primary right ” theory in terms of the seizure of tangible evidence. Fruits, instrumentalities and contraband could be seized because of the Government’s primary right; but papers, books and records which were 1 ‘ evidence ’ ’ of guilt could not be seized and no statute could authorize it. The courts in those days did not necessarily discuss seizure of “ conservations ” as evidence for obvious reasons.
Boyd v. United States (116 U. S. 616, supra) was not a search for tangible product in the ordinary sense. It involved instead a statute which compelled the party to produce invoices in a forfeiture proceeding instituted by the Government. The Government contended that the Fourth Amendment was not applicable because there was no search. The court answered (p. 622) : “It is true that certain aggravating incidents of actual search and seizure, such as forcible entry into a man’s house and searching amongst his papers, are wanting * * * but it accom *572 plishes the substantial object of those acts in forcing from a party evidence against himself. It is our opinion, therefore, that the compulsory production of a man’s private papers to establish a criminal charge against him * * * is within the scope of the Fourth Amendment * * * in all cases in which a search and seizure would be; because it is a material ingredient, and effects the sole object and purpose of search and seizure. * * * We have already noticed the intimate relation between the two amendments. They throw great light on each other. For the ‘ unreasonable searches and seizures ’ condemned in the Fourth Amendment are almost always made for the purpose of compelling a man to give evidence against himself, which in criminal cases is condemned in the Fifth Amendment ; and compelling a man 1 in a criminal case to be a witness against himself,’ which is condemned in the Fifth Amendment, throws light on the question as to what is an ‘ unreasonable search and seizure ’ within the meaning of the Fourth Amendment. And we have been unable to perceive that the seizure of a man’s private boohs and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself * * * and we are further of opinion that a compulsory production of the private boohs and papers * * * is compelling him to be a witness against himself, within the meaning of the Fifth Amendment to the constitution, and is equivalent of a search and seizure — cm unreasonable search and seizure — within the meaning of the Fourth Amendment ” (pp. 633, 634^635; italics added).
If we substitute in the italicized portion above the word “ conversations ” for “private papers” we understand better the nature of the holding in Boyd. For the Boyd case is cited as authority in all of the recent decisions of the Supreme Court which hold that the Fourth Amendment prohibits the “ seizure ” of conversations as well as tangible product of a search. Or as the court in Wong Sun v. United States (371 U. S. 471, 486) put it: “ The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion. It follows from our holding in Silverman v. United States, 365 U. S. 605, that the Fourth Amendment may protect against the overhearing of verbal statements as well as against the more traditional seizure of 1 papers and effects. ’ ”
Following Boyd the Supreme Court in a series of decisions held that the search and seizure of evidence per se is prohibited by the Fourth and Fifth Amendments see, e.g., Bram v. United States (168 U. S. 532).
*573 The prime more recent authority is the case of Gouled v. United States (255 U. S. 298). In that case “ mere evidence ” had been seized in what was otherwise an entirely lawful and reasonable search. The court said (p. 309): “ Although search warrants have thus been used in many cases ever since the adoption of the Constitution, and although their use has been extended from time to time to meet new cases within the old rules, nevertheless it is clear that, at common law and as a result of the Boyd and Weeks Cases, supra, they may not be used * * * for the purpose of making search to secure evidence to be used against him in a criminal or penal proceeding, but that they may be resorted to only when a primary right to such search and seizure may be found in the interest which the public or complainant may have in the property to be seized * * * or when a valid exercise of the police power renders possession of the property by the accused unlawful and provides that it may be taken.” (Italics added.) (See, also, United States v. Lefkowitz, 285 U. S. 452, 467; Davis v. United States, 328 U. S. 582, 587.)
Later, in Harris v. United States (331 U. S. 145,154) the court restated the rule: ‘ ‘ This court has frequently recognized the distinction between merely evidentiary materials, on the one hand, which may not be seized either under the authority of a search warrant or during the course of a search incident to arrest, and on the other hand, those objects which may validly be seized including the instrumentalities and means by which a crime is committed, the fruits of a crime such as stolen property, weapons by which escape of the person arrested might be effected, and property the possession of which is a crime.” (Italics added.)
Mr. Justice Brennan, in his dissent in Lopez v. United States (373 U. S. 427, 456-457), an eavesdropping case, made the principle absolutely clear: “ The authority of the Boyd decision has never been impeached. Its basic principle, that the Fourth and Fifth Amendments interact to create a comprehensive right of privacy, of individual freedom, has been repeatedly approved in the decisions of this Court. * * * Only two Terms ago * * * [in] Mapp v. Ohio * * * we remarked the ‘ intimate relation ’ between the Fourth and Fifth Amendments * * *. So also * * * that searches for and seizures of mere evidence as opposed to the fruits or instrumentalities of crime are impermissible under any circumstances * * * [citing Lefkowitz, Harris, Gouled, supra and Abel v. United States, 362 U. S. 217, 237-238] and that the Fourth Amendment is violated whether the search or seizure is accomplished by force, [or] subterfuge ”. (Italics added.)
*574 The late Judge Jerome Frank in an earlier dissent (which has become historic for its prediction of the Supreme Court holdings in Wong Sun [supra] and Silverman [supra]) discussed the precise issue before me (United States v. On Lee, 193 F. 2d 306, 313-314): “ A search warrant must describe the things to be seized, and those things can be only (1) instrumentalities of the crime or (2) contraband. Speech can be neither. A listening to all talk inside a house has only one purpose — evidence-gathering. No valid warrant for such listening or for the installation of a dictaphone could be issued. Such conduct is lawless, an unconstitutional violation of the owner’s privacy.” (Italics added.) (See, also, Schwartz, On Current Proposals to Legalize Wire Tapping, 103 U. Pa. L. Rev. 163; Rosenzweig, The Law of Wire Tapping, 32 Cornell L. Q. 514, 531-532 ; Comment, Limitations on Seizure of Evidentiary Objects, 20 U. Chi. L. Rev. 319, 320-322; Westin, Wiretapping — The Quiet Revolution, 29 Commentary 333; see, also, general discussion Minn. L. Rev. April, 1960; 1958 and 1959 Hearings, Senate SubJComm. on Constitutional Rights; Attorney General Rogers’ comments at hearing of Judiciary Comm, on H. R. 408-1953.)
# # *
It seems absolutely clear from the foregoing authorities that a search and seizure of tangibles which are mere evidence and a search and seizure of intangibles in the nature of conversations or verbal statements would violate the Fourth and Fifth Amendments. It follows that no State statute could authorize a violation of the United States Constitution. To the extent that sections 792 and 813-a of the Code of Criminal Procedure purport to do so these statutes are unconstitutional.
Section 813-a of the Code of Criminal Procedure does not, for it could not, violate the Fourth and Fifth Amendments. It does not by its terms authorize eavesdropping by means of an unlawful physical invasion or intrusion upon a constitutionally protected area. Indeed the eavesdropping orders in issue do not in specific terms authorize any trespass into the premises at all. But insofar as any statute or court order attempts to authorize such physical invasion or intrusion it would be unconstitutional (People v. Cahan, 282 P. 2d 905 [Cal.]; People v. Tarantino, 290 P. 2d 505 [Cal.]).
In view of my findings on the law, I merely hint at other problems which are involved should a search via a search warrant or an ex parte eavesdropping order for evidence be ruled constitutional.
*575 A search warrant and an eavesdropping order must be based on probable cause. When probable cause exists, the investigation has begun to focus on the suspect. He is then in the “ accusatorial stage ” or to put it another way, a “ prospective defendant ”.
A prospective defendant who is subpoenaed before the Grand Jury or any investigative agency is deemed “ compelled ” to testify. (People v. Gillette, 126 App. Div. 665.) And even if he testifies in all other respects voluntarily, his privilege against self incrimination is deemed violated and the indictment dismissed. (People v. Laino, 10 N Y 2d 161.) May our courts then hold that “ testimony” which he is constitutionally privileged to withhold from a Grand Jury or a State or city investigating agency may be surreptitiously and electronically seized by the Police Department, a city investigating agency? May a law-enforcement agency ‘ ‘ seize ’ ’ that which it cannot compel an accused to produce?
Another point.
An incriminating statement or confession to be admissible under the Fourteenth Amendment in a State criminal trial must be “ voluntary ”. Confessions are involuntary when u the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial not an inquisitorial system — a system in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth ” (Rogers v. Richmond, 365 U. S. 534, 540-541).
Would a “ confession ” obtained by surreptitious eavesdropping meet these standards?
In Massiah v. United States (377 U. S. 201) Federal agents obtained an incriminating statement from Massiah after he had been indicted by means of surreptitious eavesdropping. Approving People v. Waterman (9 NY 2d 561, 565) the Supreme Court held that the defendant’s own incriminating statement obtained by surreptitious eavesdropping could not constitutionally (5th and 6th Arndts.) be used by the prosecution as evidence against him at his trial.
If not after indictment may such impermissible methods be used before indictment while the accused is in the “ accusatorial ” stage? (Cf. Escobedo v. Illinois, 378 U. S. 478.)
These questions merely hint at other serious constitutional problems created by eavesdropping.
*576 IV
SUMMARY
Defendants Grossman, and Scandifia have been indicted for the crime of possession of weapons. All of the defendants have been indicted for conspiracy to commit a felony. The theory of the latter count is that the two weapons were to be used to assault or kill, not a specified person, but any and all anonymous informers, stoolies and stool pigeons. The “possession” crime is based solely on the tangible product of the search warrant, to wit, the two guns. The “ conspiracy ” crime is based solely on the conversations overheard by means of the two ‘1 bugs ’ ’. I have examined the Grand Jury minutes. No other evidence exists to support the indictment.
The motion to suppress (Code Grim. Pro., § 813-c) the tangible product of the search with the search warrant, i.e., the two weapons, is granted. There being no other evidence of any kind to support the “ possession ” count of the indictment, that count is dismissed. (People v. D’Andrea, 26 Misc 2d 95, 96-98; cf. United States v. Tane, 329 F. 2d 848, supra; United States v. Laughlin, 226 F. Supp. 112.)
Unlike the search and seizure procedural statutes (Code Crim. Pro., §§ 813-c, 813-d, 813-e) no pretrial procedure for suppressing the intangible “product” of an eavesdropping order has been adopted by the Legislature.
It may be noted in this connection that subdivision (e) of rule 41 of the Federal Buies of Criminal Procedure and section 813-c both refer to property obtained as a result of “an unlawful search and seizure ”. Yet the Federal courts under subdivision (e) of rule 41 have repeatedly entertained motions to suppress intangibles, i.e., conversations obtained by electronic eavesdropping accompanied by ‘1 trespass ’ ’ in violation of the Fourth Amendment or wiretapping (without trespass) in violation of section 605 of the Federal Communications Act. (U. S. Code, tit. 47, § 605.) (Lopez v. United States, 373 U. S. 427; Benanti v. United States, 355 U. S. 96, 99; specific issue discussed below, 244 F. 2d 389.)
Our Second Circuit so ruled recently in a section 605 issue (United States v. Tane, 329 F. 2d 848). Moreover that court held that the order of suppression if necessitating dismissal of the indictment was appealable by the Government. (See, also, Jones v. United States, 362 U. S. 257.) (Cf. United States v. Kanan, 341 F. 2d 509 [4th Arndt, issue]; United States v. Borgese, 235 F. Supp. 286 [4th Arndt, and § 605 issue]; United States v. Stone, 232 F. Supp. 396 [4th Arndt, issue].) (Cf. People v. Laverne, 14 N Y 2d 304, 309.)
*577 Apart from specific authority to suppress the intangible product of an eavesdropping order, I rule that there is inherent power in this court to entertain such a motion. In both regards, I adopt in toto the rulings of my learned colleague, Mr. Justice Shapiro, in People v. Beshany (43 Misc 2d 521) and add to his learned discussion of the issues that long before subdivision (e) of rule 41 and section 813-c were adopted, State and Federal courts entertained motions to suppress. (People v. Defore, 242 N. Y. 13; Weeks v. United States, 232 U. S. 383.) And in the Federal jurisdiction the pretrial procedure has been extended under the inherent power of the courts to involuntary confessions (Matter of Fried, 161 F. 2d 453; United States v. Carabasi, 218 F. Supp. 147).
I entertain the motion to suppress the intangible product (conversations and verbal statements) of the unconstitutional eavesdropping either under section 813-c or under the inherent power of this court. The motion is granted.
There being no evidence whatsoever before the Grand Jury, the motion to dismiss the indictment is granted.
By adopting this procedure pretrial I afford the District Attorney the right to appeal which he would not have if the same ruling “ right or wrong.” was made at the trial (People v. Marra, 13 N Y 2d 18). We have agreed that this is the better practice where 11 novel ” issues of law are involved.
# # #
For the purpose of a record, I summarize my findings of fact and conclusions of law.
1. I find that the orders authorizing the “ bugs ” at premises 446 Coney Island Avenue and at 1253 — 65th Street were not based on “ probable cause ” as required by the Fourth Amendment.
2. I find that such orders did not meet the requirements of the Fourth Amendment with respect to specificity of description of the intangible product, i.e., conversations or verbal statements, to be “ seized ”.
3. I find that the manner of executing such orders violated the Fourth Amendment in that the orders did not, because they could not, authorize a physical invasion or intrusion upon a constitutionally protected area.
4. I find that the search warrant dated July 24, 1963, was issued without probable cause since the supporting affidavit was based solely on evidence unconstitutionally “ seized”.
* * *
I summarize my conclusions on the constitutional issues.
*578 It is emphasized that only such eavesdropping (Penal Law, § 738) which violates the Fourth Amendment is determined herein to be unconstitutional. The Fourth Amendment is violated when such eavesdropping is effectuated (1) by means of a physical invasion or intrusion, (2) upon a constitutionally protected area. The Fourth Amendment is not violated when such eavesdropping is effectuated tvithout a trespass (cf. People v. Dinan, 11 N Y 2d 350).
It is not the business of a court of first instance to indulge in predictions and the question of the constitutionality of other kinds of eavesdropping, i.e., without a physical trespass, is at this stage wide open. But it is important to note that specific issues have been considered and decided by closely divided courts. It should be noted that in Lopez v. United States (373 U. S. 427, supra) three of the Justices (see Mr. Justice Brennan's dissent concurred in by Justices Douglas and Goldberg) believed that all electronic eavesdropping including wiretapping is condemned by the Privacy Clause (first clause) of the Fourth Amendment. And the Chief Justice believed that except as used in Lopes, all other types of eavesdropping are either condemned by the Fourth Amendment or should be condemned by the court in the exercise of its supervisory authority. In New York, the Chief Judge and Judges Fuld and Burke believed that the “ imperative of judicial integrity” required exclusion of all wiretap evidence. (People v. Dinan, supra.)
II
I rule that a court order issued under the authority of section 813-a of the Code of Criminal Procedure may not serve as a “search warrant” under the Warrant Clause of the Fourth Amendment to validate an intrusion or invasion into a constitutionally protected area. I base such ruling on the many cases discussed and cited under subdivision 3 of Part III which hold that a “search warrant” may not constitutionally authorize a search for or seizure of mere evidence in the nature of conversations or verbal statements.
• * *
The prime purpose of the Fourth Amendment is to deter unlawful invasions of the right of privacy by police and prosecutors. We in the courts see only the “ successful ” eavesdrop-pings, those in which the police succeed in obtaining evidence of guilt. We do not know nor can we estimate how many “unsuccessful” invasions of the privacy of innocent persons occur each day.
*579 Great secrecy surrounds the issuance of such orders. On balance, nothing within the experience of criminal law enforcement justifies this secrecy. It has been proposed that “orders ” for electronic eavesdropping be made a matter of “ ultimate ” record so that the “failures ” as well as the “ successes ” be made available for statistical study. With such a record it could easily be established whether or not eavesdropping is essential to law enforcement. (See Report of Hearings, 'Senate Sub. Comm, on Constitutional Rights, 1958, p. 206; 1959 p. 521; see, also, Chairman Hennings’ conclusions, Minn. L. Rev. April, 1960, p. 816.)
The motions are in all respects granted as indicated herein.

. This is significant in the discussion of specificity of description in a search warrant, infra. . j

. I put aside for the purpose of this opinion any discussion of the “ double focus ” of the First Clause and the Warrant Clause of the Fourth Amendment (see Lawson, The History and Development of the Fourth Amendment; see Mr. Justice Brennan’s dissent in Lopez v. United States (373 U. S. 427, part III, pp. 453-463). The premise is however that under the First Clause all searches for evidence per ee are unlawful because they infringe the privilege against self incrimination (see Entick v. Carrington, 19 Howell’s State Trials, 1029) 1073).

. “Reasonable ground to believe” is equated with “probable cause” (Draper v. United States, 358 U. S. 307, 310, n. 3).