Michael V. Tepedino,
Police Justice. This is a motion to suppress certain evidence seized at defendant’s premises by officers of the New York State Police on July 15,1966 upon execution of a search warrant issued by a Justice of the Supreme Court. Upon the seizure of horse betting slips and sheets at defendant’s premises, he was placed under arrest, and subsequently, informations were filed in this court charging him with engaging in bookmaking and maintaining a place for accepting horse racing bets in violation of sections 986 and 973 of the Penal Law.
Defendant does not directly attack the search warrant or the sufficiency of the supporting deposition. Instead, his objections are (1) the search warrant is tainted by the use of wiretap evidence obtained in violation of section 605 of the Federal Communications Act (U. S. Code, tit. 47, § 605) and (2) the search warrant must fail because the ex parte eavesdropping orders —under which the incriminating conversations were recorded— are not supported by the requisite showing of “ reasonable grounds ”.
In order to bring these contentions into proper focus, it is necessary to outline the course of the State Police investigation with particular reference to the eavesdropping obtained therein. On January 25, 1966 the State Police obtained an ex parte eavesdropping order pursuant to section 813-a of the Code of Criminal Procedure upon the basis of affidavits sub *143 mitted to a Justice of the Supreme Court. The telephone instrument authorized to be tapped was one listed to an Ames Barney Collection Agency and allegedly used by one Samuel Feldman for carrying on book-making activities. This order having expired two months from date, a second order for the eavesdropping by wiretapping of the Ames Barney phone used by Samuel Feldman was obtained on May 24, 1966 upon the basis of supporting affidavits submitted to a Justice of the Supreme Court.
In the course of recording conversations transmitted on the Ames Barney phone during the duration of the two eavesdropping orders, the State Police recorded numerous conversations between Samuel Feldman and the defendant Betor which conversations indicate that Feldman was placing or laying off horse racing bets with the defendant and that both parties were engaged in this activity on a regular and professional basis.
Seven of such conversations during the months of February, March, and June, 1966 are set forth in the rather full deposition of the State Police investigator used to obtain the search warrant of July 15, 1966 under which the evidence sought to be suppressed was obtained. It is conceded that, apart from the recorded conversations, the remainder of the affidavit does not set forth sufficient facts to constitute the probable cause required by statute and Constitution for the issuance of a warrant.
Treating first defendant’s contention regarding the insufficiency of the affidavits underlying the eavesdropping orders, the District Attorney raises the question of the defendant’s 11 standing ’ ’ to attack the orders since it was not his telephone which was intercepted by the orders. The rules of standing to attack an eavesdropping order, in contrast to a motion to suppress physical evidence under section 813-c of the Code of Criminal Procedure, have not been fully developed by the courts. There is some indication, by parity of reasoning with cases decided under section 605 of the Federal Communications Act, that one cannot ordinarily object to the use of the evidence unless he was a party to the conversation (Goldstein v. United States, 316 U. S. 114 [1942]). A recent decision of the Court of Appeals, People v. McDonnell (18 N Y 2d 509), accorded standing to a defendant, notwithstanding that the phone was not listed in his name or used by him, on the premise that the prosecution was charging him as a principal of those using the phone. Uncertain is the rule of standing applicable to this defendant, who was a party to conversations recorded by interception of another’s telephone, on a motion attacking an eavesdropping order issued under section 813-a of the Code *144 of Criminal Procedure. In view of the result reached on the merits the court will assume, without expressly so holding, that the defendant has such standing.
The aspect of the motion attacking the underlying factual basis for the eavesdropping orders is properly before this court as the trial court for prosecution of these misdemeanor charges. (People v. McCall, 17 N Y 2d 152.) It was there pointed out (p. 159) that in the case of eavesdropping orders, “as in the case of search warrants, there is a significant need for an adequate factual basis on which the Judge will be able to decide whether or not the order or warrant will issue.” There is some doubt in the court’s mind as to what is the proper test to be applied by a trial court in passing upon the adequacy of the factual basis for an order issued by another Judge. At least one court has stated that such a review should be a limited one confined to a determination of arbitrariness, on the view that an ex parte eavesdropping order is essentially a discretionary order. People v. Machlowitz (49 Misc 2d 358 [Nassau County Dist. Ct., 1966]), McCall (supra), and the Court of Appeals’ subsequent McDonnell case (supra) indicate that a complete review of the sufficiency of the affidavits is required.
Under either theory or test, the affidavits supporting both of the eavesdropping orders in this case are certainly adequate in setting forth facts and not merely inferences and conclusions. The principal affidavit supporting the January 25, 1966 order contains personal observations of the deponent as to bookmaking activities carried on in his presence and overheard by him. The events observed by the officer, together with his independent knowledge of the participant’s past history, furnished sufficient probable cause to have justified an immediate arrest and incidental search on the spot. (People v. Valentine, 17 N Y 2d 128.)
The principal affidavit in support of the second order of May 24, 1966 sets forth the same events observed by the officer on January 11, 1966; and in addition, recorded conversations of the defendant obtained by court-ordered interception of another telephone which indicate clearly his involvement in book-making on a regular and professional basis. The court finds too that this affidavit furnishes an adequate factual basis of reasonable grounds for the issuance of the order. Defendant’s contention that these facts are too remote and are not so closely related to the time of the issuance of the warrant is rejected. In view of the nature of the charge and the type of activities involved, it would be highly unreasonable and arbitrary to find that the facts on which the affidavit was made had *145 become “ stale (People v. Beshany, 43 Misc 2d 521 [Sup. Ct., Queens County, 1964].)
A more serious issue is raised by the defendant’s contention that the search warrant is tainted by the use of intercepted telephone conversations in contravention of section 605 of the Federal Communications Act. As previously indicated, the supporting deposition depends for its sufficiency upon intercepted conversations without which no showing of probable cause is established. The court is thus aware that the very consideration of this motion has embroiled the parties and has involved the court in a controversy whether the court should sanction the use of evidence which may well be in flagrant violation of Federal law. Indeed, this motion will probably provide the last and only stage for airing this perplexing problem. This was anticipated at the argument when the District Attorney advised the court that he will not introduce the wiretapped conversations or transcripts thereof at the trial but did intend to make full indirect use of the wiretapping as by offering into evidence the product seized under the search warrant.
Section 605 of the Federal Communications Act applies only to interception of telephone communications, i.e., wiretaps, and not at all to other types of “ eavesdropping ”. Section 605 not only forbids and imposes criminal sanctions for “ interception ” and “ divulgenee ”, but it also further provides: “No person having received such intercepted communications or having become acquainted with the contents * * * shall * * * use the same or any information therein contained for his own benefit or for the benefit of another”. In Nardone v. United States (308 U. S. 338) the Supreme Court held that evidence obtained in violation of section 605 must be excluded in Federal courts in order that the comprehensive scheme of Federal regulation and the public policy underlying section 605 shall have real meaning and effectiveness.
When the court in its 1952 decision in Schwartz v. Texas (344 U. S. 199) refused to command a rule of exclusion upon State courts, it followed the parallel of Wolf v. Colorado (338 U. S. 25) that evidence obtained in violation of the Fourth Amendment prohibition against unlawful search and seizure was nonetheless admissable in a State court. The later decision of the court in the celebrated Mapp v. Ohio (367 U. S. 343) has swept away that rationale.
Schwarts was greatly modified by the court in Benanti v. United States (355 U. S. 96) which dealt with the use in Federal court of evidence obtained in violation of section 605 but authorized under the New York State Constitution and section 813-a *146 of the Code of Criminal Procedure. The argument was made that no violation of section 605 occurred because the wiretap was placed by State agents acting under the laws of New York whose Constitution and statutes authorized court-ordered wiretapping. The court, directly answering and rejecting this argument, held (pp. 105-106): “ Moreover # * * had Congress intended to allow the States to make exceptions to Section 605, it would have said so. In light of the above considerations, and keeping in mind this comprehensive scheme of interstate regulation and the public policy underlying Section 605 as part of that scheme, we find that Congress, setting out a prohibition in plain terms, did not mean to allow state legislation which would contradict that section and that policy.”
Significantly, it should be pointed out that the evidence whose admissibility was questioned in Benanti was not the tapes themselves or evidence obtained directly by wiretapping, but, rather, it was through wiretapping that there was brought to light information leading to the discovery of that evidence. Nardone (supra), held that the fruits of wiretapping must be excluded as well. ‘ ‘ To forbid the direct use of methods thus characterized but to put no curb on their full indirect use would only invite the very methods deemed 1 inconsistent with ethical standards and destructive of personal liberty ’ * * * ‘ The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall not be used at all.’” (pp. 340-341).
One of the most significant Federal decisions is Pugach v. Dollinger (277 F. 2d 739, affd. without opn. 365 U. S. 458) in which the Second Circuit refused to enjoin the use of wiretap evidence in a New York court but made it clear that a State police officer who taps telephones, even when authorized by a State court order, commits a Federal crime when he divulges such information to the prosecution. It was further made clear that a Federal crime is again committed when information so obtained is used in the courtroom. A prosecution for such conduct will lie under the penal provisions of section 501 of the Federal Communications Act.
The District Attorney’s argument is that the court is bound to accept wiretap evidence by force of the decision of the Court of Appeals in People v. Dinan (11 N Y 2d 350) which was recently adhered to in People v. Cohen (18 N Y 2d 650). The court does not read Dinan in this way. Dinan is merely a pronouncement that as a matter of policy in reviewing criminal convictions the court of Appeáls will not reverse a conviction which *147 is based upon wiretap evidence. There is nothing in Binan or Cohen which compels a lower court to accept such evidence and sanction the commission of a Federal crime by the prosecution in the very courtroom.
On the basis of Benanti .(supra), courts have refused to issue wiretap orders or permit the divulgence of wiretap information in court. (Matter of Interception of Tel. Communications, 9 Misc 2d 121 [Sup. Ct., N. Y. County, 1958]; Matter of Telephone Communications, 23 Misc 2d 543 [Ct. of Gen. Sess., N. Y. County, I960].)
The court takes issue with those courts which have held that Binan sets forth a policy binding upon every trial court in every type of case presented. (People v. Granello, 48 Misc 2d 868 [Nassau County Ct., 1965]; People v. Russo, 25 Misc 2d 206 [Ct. of Gen. Sess., N. Y. County, I960].)
Today in the public forum, the entire subject of wiretapping and eavesdropping is involved in a great debate. No one questions that wiretapping poses as an unlimited and unlimitable intrusion in the right of privacy, the right called by Justice Brandéis “ the most comprehensive of rights and the right most valued by civilized men.” (Olmstead v. United States, 277 U. S. 438,478.) The dragnet or indiscriminate nature of wiretapping —dt affects not only criminals but anyone using or calling the telephone involved — has serious implications in the constitutional provisions designed to safeguard, the public’s right of privacy. Justice Nathan Sobel, a leading authority, has recently held that all electronic eavesdropping for “ evidence of a crime ” is in violation of the Fourth Amendment requirement of specificity. (People v. Grossman, 45 Misc 2d 557.) In reaction to the public outcry against electronic encroachments on the citizen’s right of privacy, conscientious prosecutors have proposed a balanced or compromise solution — restriction of wiretapping to a few major crimes. It is hoped that such a solution may be achieved by new and carefully drawn legislation.
In the present case we deal not with threats or crimes of violence which endanger life or security. While the enterprise of book-making, even on the smallest scale, is one that ought to be suppressed, it is not one that warrants this court in sanctioning the commission of á criminal act within the very courtroom where the trial is to be held. It is the court’s determination that in this case the acceptance of evidence obtained in flagrant contravention of Federal statute is not warranted.
Accordingly, all wiretap evidence and all evidence obtained as a result of wiretapping, including the product of the search by [warrant on July 15,1966, is hereby suppressed.